Robert L. WHITE, Plaintiff-Respondent,

v.

Joseph T. RUDITYS, John Schuster, Gerald Frank, Anthony Nikulski, August Erdmann, and Milwaukee Professional Firefighters', Local 215, IAFF, AFL–CIO, Defendants-Appellants.

Court of Appeals

*No. 83–127. Submitted on briefs November 16, 1983,— Decided December 27, 1983.*
(Also reported in 343 N.W.2d 421.)

For the defendants-appellants the cause was submitted on the briefs of *Habush, Habush & Davis, S.C.*, with *John S. Williamson, Jr., of counsel,* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James C. McNeely* and *Michael L. Smith* of Milwaukee.

Before Wedemeyer, P.J., Decker and Moser, JJ.

WEDEMEYER, P.J. Joseph T. Ruditys, John Schuster, Gerald Frank, Anthony Nikulski, August Erdmann and Milwaukee Professional Firefighters, Local 215, IAFF, AFL–CIO (Union) appeal from those parts of a judgment entered March 1, 1983, wherein the trial court permanently enjoined the Union from the enforcement of the Union resolution of April, 1981, awarded Robert L. White punitive damages of $25,000 and awarded White $10,037.50 as actual attorney fees. On appeal the Union raises the following issues: (1) whether White's action was barred by the one-year statute of limitation contained in sec. 111.07(14), Stats.; (2) whether the trial court erred in granting White a permanent injunction because White had failed to prove that the Union's strike was illegal; (3) whether the trial court erred in awarding White punitive damages, and; (4) whether the trial court erred in awarding White actual attorney fees. We affirm that part of the judgment granting the injunction. While we agree with the trial court that punitive damages and attorney fees may be awarded in an equitable action, we reverse the instant awards of punitive damages and attorney fees because the trial court misused its discretion by failing to apply the proper factors. Accordingly, we remand the cause for further proceedings consistent with this opinion.

This action arose from two strikes led by the Union. The first strike occurred March 1, 1981. The city of Milwaukee brought suit to enjoin this strike on the ground that it was unlawful. This suit was dismissed without prejudice before the trial court could resolve that issue. The second strike occurred March 20, 1981. Again, the city sought to enjoin that strike. While the trial court granted the city a temporary injunction, this suit was also dismissed prior to the granting of a permanent injunction.

White continued to work during the March 1 strike. At a meeting held on April 13 and 14, 1981, the Union adopted a resolution describing White and another firefighter, who also worked during the strike, as "two scabs;" recording them as being in bad standing; imposing a $500 fine; requesting them to apologize and depriving them of the right to trade shifts with other members. The resolution also provided that their names would be read at union meetings, that they each must perform forty-eight hours of work for the Union and that other members were to hold them in disdain and report any unusual behavior by them.

In his complaint, filed with his request for the temporary restraining order, White sought $5,000 compensatory and $100,000 punitive damages for the Union's alleged intentional infliction of emotional distress, and $1,000 compensatory and $5,000 punitive damages for the Union's alleged conversion of his union dues. He also sought to enjoin the Union from implementing the resolution.

On May 28, 1982, White sought and was granted an *ex parte* temporary restraining order directing the Union to desist from implementing the resolution. A hearing for a temporary injunction was held June 2, 1982. The trial court denied the temporary injunction.

The Union in its answer asserted, as an affirmative defense, that the matter should be submitted to the Wisconsin Employment Relations Commission (WERC) and that White's action was barred by the one-year statute of limitations contained in sec. 111.07(14), Stats.

The Union moved for summary judgment on White's claims for intentional infliction of emotional distress and conversion. In an oral decision rendered October 5, 1982, the trial court granted the Union's motion. No appeal was taken from the granting of summary judgment. The only issue remaining for the trial court to consider was whether the Union should be enjoined from implementing the resolution.

Following the trial, the trial court enjoined the implementation of the resolution. The trial court also, *sua sponte,* raised the issues of punitive damages and attorney fees. The trial court directed the parties to brief these issues. After the briefs were submitted, the trial court awarded White $25,000 in punitive damages and $10,037.50 in attorney fees, calculated at the "suggested rate of $125 per hour."

## STATUTE OF LIMITATIONS

The Union first argues that the instant action is barred by the one-year statute of limitations contained in sec. 111.07(14), Stats. The Union contends that the trial court erred in not transferring this case to the WERC. We are not persuaded by this argument.

This action comes within the ambit of sec. 111.70, Stats. and as such, sec. 111.70(4)(a) applies. Section 111.70(4)(a) reads as follows:

Section 111.07 shall govern procedure in all cases involving prohibited practices under this subchapter ex-

■

cept that wherever the term "unfair labor practices" appears in s. 111.07 the term "prohibited practices" shall be substituted.

Section 111.07(1), Stats., establishes concurrent jurisdiction in the WERC and the circuit court. That section reads as follows:

Any controversy concerning unfair labor practices may be submitted to the commission in the manner and with the effect provided in this subchapter, *but nothing herein shall prevent the pursuit of legal or equitable relief in courts of competent jurisdiction.* [Emphasis added.]

On review of a trial court's decision to retain jurisdiction, this court must determine whether the trial court abused its discretion. *Browne v. Milwaukee Board of School Directors*, 83 Wis. 2d 316, 328, 265 N.W.2d 559, 564 (1978).

In discussing whether the WERC or the circuit court should exercise jurisdiction, the supreme court has stated:

"Nonetheless, we believe it improper to couch such priority in terms of power or jurisdiction. The standard, in our opinion, should not be power but comity. The court must consider which course would best serve the ends of justice. If the issue presented to the court involves exclusively factual issues within the peculiar expertise of the commission, the obviously better course would be to decline jurisdiction and to refer the matter to the agency. On the other hand, if statutory interpretation or issues of law are significant, the court may properly choose in its discretion to entertain the proceedings. The trial court should exercise its discretion with an understanding that the legislature has created the agency in order to afford a systematic method of fact-finding and policy-making and that the agency's jurisdiction should be given priority in the absence of a valid reason for judicial intervention." [Citation omitted.] *Id.* at 329, 265 N.W.2d at 564–65.

Because the trial court had to determine whether the Union had breached its own constitution and by-laws and whether the strike was illegal, we conclude that the trial court did not misuse its discretion by retaining jurisdiction over this action.

The Union next contends that, even if it was proper for the trial court to retain jurisdiction over this action, the trial court was required to apply the same statute of limitations contained in sec. 111.07 (14), Stats. We disagree.

Section 111.07 (14), Stats., reads as follows: "The right of any person *to proceed under this section* shall not extend beyond one year from the date of the specific act or unfair labor practice alleged." [Emphasis added.]

This one-year statute of limitations applies only to actions proceeding under sec. 111.07, Stats. As noted above, sec. 111.07 (1) concerns controversies submitted to the commission. It further states that "nothing herein shall prevent the pursuit of legal or equitable relief in courts of competent jurisdiction." Here, White sought relief in the circuit court. Therefore, we conclude the strictures of sec. 111.07 are not applicable. *See Tully v. Fred Olson Motor Service Co.,* 27 Wis. 2d 476, 488–89, 134 N.W.2d 393, 399 (1965).

## GRANTING OF INJUNCTION

The Union next argues that the trial court erred in granting White a permanent injunction because White had failed to prove that the Union's strike was illegal. We do not agree.

The record reflects that the trial court took judicial notice of the fact that Judge Miech, when issuing the

temporary injunction enjoining the strike, stated: "Court issues, reluctantly, temporary injunction upon—pursuant to sec. 813.02, sec. 111.70 (7) (m) upon complaint and testimony of Chief Stamm, Court finds petitioner, City of Milwaukee, has met burden of proof and further ordered defendants, Milwaukee Professional Firefighters Association, Local 215, et al., desist from *illegal strike.*" [Emphasis added.] We note that the Union did not object to the trial court taking judicial notice of this fact. Because no challenge was made by either party to the legality of the strike during the trial, we will not entertain this issue now.

In discussing the requirements for a permanent injunction, the supreme court has stated:

The injunction is a preventive order looking to the future conduct of the parties. To obtain an injunction, a plaintiff must show a sufficient probability that future conduct of the defendant will violate a right of and will injure the plaintiff. To invoke the remedy of injunction the plaintiff must moreover establish that the injury is irreparable, *i.e.* not adequately compensable in damages. Finally, injunctive relief is addressed to the sound discretion of the trial court; competing interests must be reconciled and the plaintiff must satisfy the trial court that on balance equity favors issuing the injunction. [Citations and footnote omitted.] *Pure Milk Products Cooperative v. National Farmers Organization,* 90 Wis. 2d 781, 800, 280 N.W.2d 691, 700 (1979).

Here, the trial court found that the Union's actions violated White's right not to participate in an illegal strike and as a result of the resolution which the Union passed White has suffered an irreparable injury. The trial court also found that the Union's action violated its constitution and by-laws. Upon review of the record and the trial court's findings, we conclude that the trial court did not misuse its discretion by issuing the injunction.

White's rights have clearly been violated and he has suffered irreparable injury.

## PUNITIVE DAMAGES

The Union next argues that the trial court erred in awarding White punitive damages. The Union contends that punitive damages cannot be awarded in an equitable action. We disagree.

In support of its argument the Union refers this court to *Karns v. Allen*, 135 Wis. 48, 115 N.W. 357 (1908) where the supreme court stated: "[The plaintiffs] elected to sue in equity, and having done so they brought themselves within the rules of equitable actions and waived the right to recover exemplary damages." *Id.* at 59, 115 N.W. at 361. We note that at the time *Karns* was decided the supreme court was unable to find any cases where exemplary damages were allowed by a court of equity. *Id.* at 57, 115 N.W. at 360. Since the *Karns* decision, many jurisdictions have reached the question of whether a court in equity may award punitive damages.[1]

---

[1] The following states allow punitive damages to be awarded in an equitable action: *Berry v. McLeod*, 604 P.2d 610 (Ariz. 1979); *Union Oil Co. v. Reconstruction Oil Co.*, 66 P.2d 1215 (Cal. App. 1937); *General Refractories Co. v. Rogers*, 239 S.E. 2d 795 (Ga. 1977); *Hedworth v. Chapman*, 192 N.E.2d 649 (Ind. App. 1963); *Charles v. Epperson & Co.*, 137 N.W.2d 605 (Iowa 1965); *Martin v. Swenson*, 335 F. Supp. 765 (W.D. Mo. 1971); *Tahoe Village Realty v. DeSmet*, 590 P.2d 1158 (Nev. 1979); *I.H.P. Corp. v. 210 Central Park South Corp.*, 228 N.Y.S.2d 883 (N.Y. App. Div. 1962); *Eakman v. Robb*, 237 N.W.2d 423 (N.D. 1975); *Z. D. Howard Co. v. Cartwright*, 537 P.2d 345 (Okla. 1975); *Kneeland v. Bruce*, 336 S.W.2d 319 (Tenn. App. 1960); *National Bank of Commerce v. May*, 583 S.W.2d 685 (Tex. Civ. App. 1979).
The following states refuse to award punitive damages in equitable actions: *Dekle v. Vann*, 223 So. 2d 30 (Ala. 1969);

The traditional rule holds that punitive damages may not be recovered in a court of equity. Some courts subscribing to this view have been content merely to state that such damages are "not awarded" by or are "not recoverable" in equity. Other courts have taken the position that a court of equity does not have the inherent power to award such damages. Still other courts, without reference to whether such power exists, have held that such damages may not be recovered in equity, upon one or both of the theories that an award of punitive damages is incompatible with the fundamental principles of equity, and that by seeking relief in equity a litigant waives all claims to punitive damages. Annot., 48 A.L.R. 2d 947, 949 (1956). One authority notes, however, that "[a] strong current of modern decisions . . . will probably carry the issue in the other direction, with the allowance of punitive damages in equity as well as at law." [Footnote omitted.] D. Dobbs, Handbook on the Law of Remedies, § 3.9, at 211 (1973).

While no Wisconsin case since 1908 has decided this issue, dicta in *Wussow v. Commercial Mechanisms, Inc.*, 97 Wis. 2d 136, 293 N.W.2d 897 (1980) appears to support the awarding of punitive damages in an equitable action. The supreme court stated:

It could not be reasonably argued that, in a case which showed a need for both equitable relief and damages, the granting of an injunction would bar a plaintiff from

*LittleJohn v. Grand Int'l Bhd. of Locomotive Eng'rs*, 20 P.2d 311 (Colo. 1933); *Beals v. Washington Int'l, Inc.*, 386 A.2d 1156 (Del. Ch. 1978); *Orkin Exterminating Co. v. Truly Nolen, Inc.*, 117 So. 2d 419 (Fla. Dist. Ct. App. 1960); *Prucha v. Weiss*, 197 A.2d 253 (Md. 1964); *Kemp v. Lake Serene Property Owners Assoc., Inc.*, 256 So. 2d 924 (Miss. 1971); *Sickler v. City of Broken Bow*, 10 N.W.2d 462 (Neb. 1943); *Pedah Co. v. Hunt*, 509 P.2d 1197 (Ore. 1973); *Mortgage Loan Co. v. Townsend*, 152 S.E. 878 (S.C. 1930); *Colonna Dry Dock Co. v. Colonna*, 61 S.E. 770 (Va. 1908).

additionally seeking damages although all stemmed from a single cause of action. This is the everyday use of an injunction to prevent further harm, and the same cause of action will support a damage award. They are merely alternative or concomitant remedies. [Citation omitted.] *Id.* at 151–52, 293 N.W.2d at 905.

The seminal case adopting the modern view is *I.H.P. Corp. v. 210 Central Park South Corp.*, 228 N.Y.S.2d 883 (N.Y. App. Div. 1962), *aff'd,* 189 N.E.2d 812 (N.Y. 1963).[2] In *I.H.P. Corp.*, the New York appellate court reviewed the reasons assigned for the traditional rule. *Id.* at 886. The first reason it discussed was that a court of equity has no power to award punitive damages. In rejecting this reason, the court stated that: "[t]his presupposes that courts still sit exclusively either as equity or law courts and cannot act in both roles at the same time in the same case. By statute, however, legal and equitable causes of action may be joined in the same complaint. . . ." *Id.* We note that Wisconsin has also abolished the distinction between actions at law and suits in equity. *See* 1 E. Bryant, *Wisconsin Pleading and Practice* § 6.10, at 278 (1978).

The second reason the court reviewed was that punitive damages are incompatible with equitable principles. The court dismissed this reason stating:

Such approach, however, would run counter to another equitable principle, of equal standing, that equity will mold its decrees to suit the needs of the particular case. Thus, while tradition and precedent might forbid the Chancellor, as such, from awarding punitive damages, an equally strong tradition would bar any unqualified rule that customary forms of equitable relief will invariably be adequate and will always preclude accepted forms of legal relief. Such inflexibility has never been characteristic of equity jurisprudence. *Id.* at 887.

---

[2] For a further discussion of *I.H.P. Corp., see:* 29 Brooklyn L. Rev. 164 (1962); 12 Buffalo L. Rev. 384 (1962–1963); 63 Colum. L. Rev. 175 (1963); 31 Fordham L. Rev. 825 (1962–1963).

The last reason the court discussed was that by suing for equitable relief an aggrieved party waives all claims to punitive damages. The court summarily rejected this reason, stating:

This is the least substantial of the attempted justifications. In the absence of words or conduct by a party which manifest an intention to waive any of his remedies, it merely begs the question to hold that a waiver has resulted from a mere asking for equitable relief. A party cannot reasonably be deemed to have waived a remedy unless he seeks others, knowing they are exclusive. But whether they are exclusive is the very issue to be here resolved. Nor is there any good reason, except that of historical accident, why one should be compelled to elect between two inadequate remedies. *Id.* at 888.

The court went on to hold that it was proper for the trial court to recognize that a court embracing both the powers of a court of law and a court of equity, in the common-law tradition, should not be frustrated and should achieve a just result by awarding punitive damages in addition to equitable relief. *Id.* at 888–89.

We determine that the reasoning employed in *I.H.P. Corp.* in rejecting the waiver theory is persuasive and conclude that Wisconsin should also reject this approach. This is especially true in light of the dicta contained in *Wussow, supra.* We do not, however, conclude that the power to award punitive damages is the result of the merger of courts of law and courts of equity. We determine that the power to award punitive damages is derived from the flexibility a court of equity has in fashioning its relief.

Equitable remedies . . . are distinguished by their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circum-

stances of every case and the complex relations of all the parties. [Footnote omitted.] 1 J. Pomeroy, A Treatise on Equity Jurisprudence. § 109 (5th ed. 1941).

Because we conclude that it is within the discretion of the trial court acting in equity to award punitive damages, we hold that the determination of punitive damages is not a jury issue. The trial court in awarding punitive damages, however, must apply the same factors which the jury applies. These factors are: "the grievousness of defendant's acts; the degree of malicious intention; the potential damage which might have been done by such acts as well as the actual damage; and the defendant's ability to pay." *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 302, 294 N.W.2d 437, 459 (1980). Here, the trial court paid mere lip service to these factors. This is not a proper exercise of discretion. Therefore, we must remand this case to the trial court for a redetermination of punitive damages based on the proper application of these factors.

## ATTORNEY FEES

Lastly, the Union argues that the trial court erred in awarding White attorney fees. As noted above, a court of equity has a great deal of flexibility in fashioning its remedy. We conclude that this includes the awarding of attorney fees. Here, the trial court did not determine the reasonableness of the fees. Therefore, we must also remand this case for such a determination. *See Selchert v. Selchert,* 90 Wis. 2d 1, 16, 280 N.W.2d 293, 300–01 (Ct. App. 1979).

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded.