LOCAL 913, AFSCME, AFL-CIO and Beverly
Greycarek, Plaintiffs-Appellants,†

v.

MANITOWOC COUNTY, Defendant-Respondent.

Court of Appeals

*No. 86–1231. Argued June 4, 1987.—Decided June 17, 1987.*

(Also reported in 410 N.W.2d 641.)

† Petition to review pending. This petition was not decided at
the time the volume went to press. Its disposition will be reported in a
later volume.

On behalf of the plaintiffs-appellants there were briefs and oral argument by *Bruce F. Ehlke* of *Lawton & Cates, S.C.* of Madison.

On behalf of the defendant-respondent there was a brief and oral argument by *Mark Hazelbaker*, Corporation Counsel for Manitowoc county.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.   AFSCME, Local 913 and Beverly Greycarek (collectively Local 913) appeal from an order dismissing their complaint which sought to prohibit the leasing of a county-owned nursing home to a private operator. We conclude that the trial court properly held that sec. 49.14(3), Stats., does not prohibit the leasing of a county-owned nursing home facility because the nursing home is not a "county home" within the meaning of the statute. However, we also conclude that the trial court abused its discretion in dismissing other causes of action alleging various violations of sec. 111.70, Stats., and the collective bargaining agreement on the grounds of comity and reverse that portion of the order dismissing those causes of action.

Manitowoc county managed, operated and maintained the Park Lawn Home, a residential facility that provided skilled nursing care for dependent and other county residents. After some preliminary negotiations with Local 913, the county board of supervisors met and voted to lease Park Lawn to a private nursing home operator and assign all responsibility for managing and maintaining the facility to the operator. Local 913, acting on behalf of its members, employees of Park Lawn who may be adversely affected by the lease, filed a prohibited practices complaint with the Wisconsin Employment Relations Commission (WERC).

While the case was still pending before WERC, Local 913 and Beverly Greycarek, one of the nursing home employees, filed a complaint in Manitowoc county circuit court setting forth four causes of action. The first cause of action alleged that the lease

between Park Lawn and the operator violated sec. 49.14(3), Stats. The second cause of action alleged a violation of sec. 46.18(1), Stats., and has been abandoned on appeal. The third and fourth causes of action alleged breach of the collective bargaining agreement between the county and Park Lawn employees and alleged that the decision to lease Park Lawn to a private operator without bargaining with the union about the decision to do so violated sec. 111.70(3)(a)1 and (3)(a)4, Stats. Both declarative and injunctive relief were requested. The trial court granted the county's motion to dismiss and Local 913 appeals.[1]

At the hearing on the motion to dismiss, the trial court held that Park Lawn was not a "county home" within the meaning of sec. 49.14(3), Stats. That section provides:

> No county in which a county home is established shall contract to conduct the same or to support and maintain the inmates thereof; and all agreements in violation of this subsection are void.

---

[1] At oral argument the county argued that this appeal has been rendered moot by the sale of Park Lawn. We decline to reach the issue of whether the issues contained herein are moot or not. While it is in the interest of judicial economy not to litigate issues that will not affect real parties to an existing controversy, certain exceptions to this general rule have been established. *State ex rel. La Crosse Tribune v. Circuit Court,* 115 Wis. 2d 220, 228–29, 340 N.W.2d 460, 464 (1983). Two of those exceptions are especially relevant here. They are: (1) where the issue is likely to arise again and should be resolved by the court to avoid uncertainty, and (2) where a question is capable and likely of repetition and yet evades review because the appellate process usually cannot be completed and frequently cannot even be undertaken within the time that would have a practical effect upon the parties. *Id.* at 229, 340 N.W.2d at 464.

Local 913 argues that even though Park Lawn is a nursing home, it does not necessarily follow that it cannot also be a "county home" within the protective confines of sec. 49.14(3).

The meaning of a statute is a question of law which we will decide independent of the trial court's conclusions. *Estate of Boyle v. Wickhem, Buell, Meier, Wickhem & Southworth, S.C.,* 134 Wis. 2d 214, 218, 397 N.W.2d 124, 126 (Ct. App. 1986). The aim of statutory construction is to discern the legislature's intent. *LaRene v. LaRene,* 133 Wis. 2d 115, 118, 394 N.W.2d 742, 743–44 (Ct. App. 1986). The initial inquiry on any question of statutory construction is to the plain meaning of the statute. In addition, the entire section of the statute and related sections are to be considered in its construction or interpretation. *State ex rel. Ondrasek v. Circuit Court,* 133 Wis. 2d 177, 182, 394 N.W.2d 912, 914 (Ct. App. 1986). Generally, rules of construction are used only to determine the meaning of an ambiguous statute. *Estate of Boyle,* 134 Wis. 2d at 219, 397 N.W.2d at 126.

Section 49.14(1), Stats., gives counties the power to establish a county home for the relief and support of "dependent persons." "Dependent persons" are defined in sec. 49.01(2), Stats. A dependent person or dependent is an individual without presently available money, income, property or credit or the means by which it can presently be obtained to provide for necessities such as food, shelter, medical treatment, etc. *Id.*

Section 50.01(3)(a), Stats., defines "nursing home" as:

> A place which provides 24-hour services including board and room to 3 or more unrelated residents who because of their mental or physical condition require nursing care or personal care in excess of 7 hours a week ... .

Under this definition, residents can receive nursing care regardless of their financial status.

Chapter 49, Stats., which governs county homes, is entitled "Public Assistance." A county home's purpose is to care for those who cannot financially support themselves. *See* sec. 49.01(2), Stats. Nursing homes, on the other hand, are to care for those who are unable to care for themselves because of mental or physical infirmities. This distinction is further bolstered when one examines how these institutions are supported financially.

County homes are reimbursed for their care of one who is unable to pay through the general assistance or welfare fund of that person's home county. *See* sec. 49.15, Stats. In contrast, residents of a nursing home are required to pay from their own resources as long as they are able. When personal assets are exhausted, medical assistance takes over. *See* sec. 49.47(4), Stats., and Wis. Adm. Code, sec. HSS 103.04. In fact, federal law prohibits one from attempting to bill third parties for care other than medical assistance provided to indigents in nursing homes. 42 U.S.C. § 1396h(d) (1982).

Nursing homes and county homes are operated under different regulations. Chapter 150, Stats., entitled "Regulation of Health Services" regulates the number of beds available in nursing homes across the state, as well as the construction or replacement of nursing homes and capital expenditures by or on behalf of a nursing home. *See* sec. 150.21, *et seq.,* Stats.

There are no such limits on the number of beds for the poor and indigent in county homes.

█

The legislature has also recognized the distinction between county homes and nursing homes by providing a mechanism by which county homes may convert to nursing homes. Section 46.175, Stats.,[2] requires that a facility that does convert must abide by the licensure requirements established by the department of health and social services. Under the legislative scheme, these different facilities do not simply merge. We conclude that sec. 49.14(3), Stats., is unambiguous and that the trial court correctly held that Park Lawn was not a county home within the meaning of the statute.

Local 913 next contends that the trial court erred when it dismissed the third and fourth causes of action on the grounds of comity.[3] Section 111.07(1),

---

[2]Section 46.175, Stats., reads:

**County institutions: minimum standards.** Notwithstanding any other provision of law, any county currently operating an institution established under s. 49.14, 49.16, 49.171, 51.08 or 51.09 may, by resolution of the county board, designate such institution or distinct part of such institution as a facility to be operated under s. 50.02, 50.03 or 50.33. Any county institution or part thereof, where so designated, shall be required to meet those licensure standards established by the department for the type of facility designated by the county. Any designation under this section may be made only if such designation will not result in any additional cost to the state.

[3]The written order dismissing the third and fourth causes of action indicated that the case was dismissed on the basis of sec. 802.06(2)(j), Stats. However, the oral decision rendered from the bench indicated that the judge dismissed on the basis of comity. At oral argument both parties conceded that the trial court's decision was premised upon the principles of comity.

Stats., establishes concurrent jurisdiction in WERC and the circuit court. That section reads:

> Any controversy concerning unfair labor practices may be submitted to the commission in the manner and with the effect provided in this subchapter, *but nothing herein shall prevent the pursuit of legal or equitable relief in courts of competent jurisdiction.* [Emphasis added.]

On review of a trial court's decision to defer to an administrative agency, this court must determine whether the trial court abused its discretion. *See White v. Ruditys,* 117 Wis. 2d 130, 135, 343 N.W.2d 421, 423 (Ct. App. 1983). There are a number of legal principles which come into play when there is concurrent jurisdiction, two of which are the primary jurisdiction rule[4] and the exhaustion rule.[5] Although

---

[4]The purpose of the primary jurisdiction rule is to promote proper relationships between courts and administrative agencies. When an issue arises which fits squarely within the very area for which the agency was created, it would be logical to require prior administrative recourse before a court entertains jurisdiction. *Wisconsin Collectors Ass'n, Inc. v. Thorp Fin. Corp.,* 32 Wis. 2d 36, 44, 145 N.W.2d 33, 36 (1966). The judicial process should be suspended pending referral of such issues to the administrative body for its review. *Id.* at 47, 145 N.W.2d at 38. The primary jurisdiction rule only applies, however, when there has been a total absence of any formal proceedings before the agency. *Id.*

[5]The exhaustion rule is premised upon the assumption that an administrative remedy which will protect the party's claim of right is readily available to a party on the party's initiative. *Kramer v. Horton,* 128 Wis. 2d 404, 414, 383 N.W.2d 54, 58 (1986). Courts should, therefore, deny judicial relief until the parties have exhausted their administrative remedies. *Id.* The exhaustion rule is typically applied when a party seeks judicial intervention before completing all of the steps prescribed in the hierarchy of adminis-

483

neither is controlling in the situation at hand, both offer some guidance.

■

The concept of comity between an administrative agency and the courts has been utilized in the primary jurisdiction rule. *Wisconsin Collectors Ass'n, Inc. v. Thorp Fin. Corp.,* 32 Wis. 2d 36, 44–45, 145 N.W.2d 33, 36–37 (1966). Comity is defined as the principle that courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state out of deference and mutual respect. *Black's Law Dictionary* 242 (5th ed. 1979). The theory behind the rule is applicable to courts and administrative agencies within the same state. Thus, when a court faces the issue of whether the court or an administrative agency should hear a case, the court must consider which course would best serve the ends of justice. *White,* 117 Wis. 2d at 135, 343 N.W.2d at 423.

■

The doctrine of exhaustion goes hand in hand with the notion of judicial economy. *Kramer v. Horton,* 128 Wis. 2d 404, 418, 383 N.W.2d 54, 59, *cert. denied,* 107 S.Ct. 324 (1986). The rules of exhaustion allow the administrative agency to perform the functions delegated to it by the legislature without interference by the courts. The doctrine allows the agency to apply its special competence and expertise and make a factual record. It also promotes finality of decision-making, prevents a multiplicity of suits and achieves an economy of judicial time. *County of Sauk v. Trager,* 118 Wis. 2d 204, 210–11, 346 N.W.2d 756, 759–60 (1984).

---

trative agency proceedings. *County of Sauk v. Trager,* 118 Wis. 2d 204, 210, 346 N.W.2d 756, 759 (1984).

The trial court considered both comity and judicial economy. The court considered the fact that Local 913 chose the forum for the dispute by filing the prohibited practices complaint with WERC and that WERC had accepted jurisdiction over those issues before a complaint was filed in the circuit court. The court also considered that the alleged prohibited practices involved areas specifically within the expertise of WERC and that the issues could be resolved faster before WERC. The court found that neither party's due process rights would be adversely affected by proceeding before WERC instead of in the circuit court and that WERC could provide the same remedies as are available in circuit court. The court also recognized the inherent problems with having an administrative case pending at the same time a case is pending in circuit court.

The reasoning of the trial court is, in our view, sound and sufficient to support its decision to defer to WERC, a practice which may be preferable in most cases. However, by dismissing the case instead of adjourning it, the trial court temporarily foreclosed Local 913 from one of the avenues of relief it is entitled to by statute. The unique language of sec. 111.07(1), Stats., unqualifiably states that "nothing herein shall prevent the pursuit of legal or equitable relief in courts of competent jurisdiction." Local 913's complaint against the county specifically requested injunctive relief, a remedy WERC is unable to provide. Local 913 commenced the circuit court action in case some type of injunctive relief would be necessary. Section 111.07(1) specifically affords parties the opportunity to have virtually the same controversy pending

in two forums. Therefore, we reverse that portion of the trial court's decision ordering dismissal.

No costs to either party.

*By the Court.*—Order affirmed in part; reversed in part, and cause remanded.