LOCAL UNION NO. 2490, AFSCME, AFL-CIO, and Dorothy Bednar, Plaintiffs-Appellants.

v.

WAUKESHA COUNTY, Defendant-Respondent.

Court of Appeals

*No. 87–1310. Submitted on briefs January 6, 1988.—Decided February 3, 1988.*

(Also reported in 422 N.W.2d 117.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Bruce F. Ehlke* of *Lawton & Cates, S.C.* of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Marshall R. Berkoff* and *Robert M. Ling, Jr.* of *Michael, Best & Friedrich,* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Section 49.14(3), Stats., prohibits a county from contracting with a third party for the operation of a county home or for the support and maintenance of the residents of such a home. The issue in this case is whether Waukesha county violated this statute by leasing Northview Home, a county facility, and by selling the home's business to Linden-

Grove, Inc., a private health care provider. At summary judgment, the trial court ruled that the county's actions did not violate the statute. Accordingly, the court dismissed the complaint of Dorothy Bednar, a county employee at Northview Home, and Local Union No. 2490, AFSCME, AFL-CIO, the union representing the county employees at the home (collectively, the union). We affirm the judgment.

## FACTS

The union did not file any counteraffidavits as to the issue on appeal. Accordingly, the controlling facts were not in dispute and the only issue remaining was a question of law. Therefore, the matter was appropriately before the circuit court by way of summary judgment. *See Kerns v. Madison Gas & Elec. Co.*, 134 Wis. 2d 387, 391, 396 N.W.2d 788, 790 (Ct. App. 1986).

The affidavit of Daniel Nabke, a Waukesha County Supervisor, provides the necessary factual background for this case. Supervisor Nabke's affidavit recites that Waukesha county was licensed by the State of Wisconsin to operate Northview Home as a 405-bed, skilled nursing facility. During the 1980's, Northview Home experienced rising annual deficits requiring the county to subsidize its operation. In response to this problem, the Waukesha County Board of Supervisors, in early 1985, created the Northview Home Building Study Committee. Supervisor Nabke was appointed chairman of the committee. The committee was to assess Northview Home's future and to explore alternative courses of action for operation of the facility.

In its initial meetings, the study committee heard from various individuals who described the then-current financial and physical condition of Northview Home. The committee also received information as to trends in the nursing care industry. The committee then hired a private consultant and commissioned an independent comprehensive study to assist the committee in its endeavors. In November 1985, the report was issued. It detailed the poor physical condition of Northview Home and suggested that operating deficits would not only continue but also would increase. The report recommended that the county construct a new facility to replace Northview Home.[1]

In late 1985 and early 1986, certain private sector health care providers began indicating an interest in providing nursing home care to Waukesha area residents. The study committee reviewed certain of these proposals. In February 1986, the committee recommended to the county board that formal solicitation for private sector proposals regarding the possible sale, lease and other alternatives regarding Northview Home be conducted. The board accepted this recommendation and invited proposals in a published request.

This solicitation resulted in seven proposals being submitted, including that by LindenGrove.[2] Those proposals which merely offered management services

---

[1]This recommendation was never adopted or implemented by the county board.

[2]LindenGrove, Inc. is a Wisconsin corporation, representing a joint venture of Community Memorial Hospital of Menomonee Falls, Inc. and Waukesha Hospital System, Inc. When the county received this proposal, LindenGrove was not yet incorporated. Thus, the proposal was submitted by the members of the joint venture rather than by the corporation.

441

were rejected. The remaining proposals, including LindenGrove's, were sale transactions whereby the county would completely divest itself from the nursing home business.

In the meantime, the study committee concluded that "Waukesha County can best provide for the long-term care of its elderly and others in need of long-term care by discontinuing ownership and operation of Northview Home and that in the best interests of the Northview residents and Waukesha county citizens, a private entity provide for future care." A recommendation to this effect was made to the county board. In addition, the committee recommended that the county accept the LindenGrove proposal.

On October 7, 1986, the county board adopted an ordinance which ratified the recommendations of the study committee and also accepted the proposal submitted by LindenGrove. Negotiations for completion of the LindenGrove proposal followed, resulting in an "Agreement Of Purchase And Sale" and a lease agreement between the county and LindenGrove. The transaction was completed on December 17, 1986.

Before moving to a discussion of sec. 49.14(3), Stats., we must address the county's request that we affirm the trial court's ruling on the basis of our decision in *Local 913 v. Manitowoc County,* 140 Wis. 2d 476, 410 N.W.2d 641 (Ct. App. 1987). In *Manitowoc,* we affirmed a trial court ruling that a Manitowoc county facility was a nursing home and not a county home for purposes of a sec. 49.14(3) challenge.

In support of its request, the county notes: (1) that the summary judgment record in this case repeatedly identifies Northview Home as a "nursing home"; (2) that the transaction between the county and Linden-Grove reveals a clear intent by LindenGrove to

operate Northview Home as a nursing home facility; and (3) that Waukesha county previously operated the facility as a nursing home.

However, this case was not pled, summarily tried or decided under the *Manitowoc* theory. In fact, our decision in *Manitowoc* was not yet released when the trial court made its bench ruling in this case (although the decision was released prior to the judgment). Moreover, in its reply brief, the union presents certain nuances to its argument which were not asserted in *Manitowoc*. For these reasons we think it inappropriate to apply the *Manitowoc* case here.

Therefore, for purposes of this decision, we consider Northview Home as a county home pursuant to sec. 49.14, Stats.

## SECTION 49.14(3), STATS.

Section 49.14(3), Stats., provides:

> No county in which a county home is established shall contract to conduct the same or to support and maintain the inmates thereof; and all agreements in violation of this subsection are void.

In response to the Northview Home sale and lease agreement between the county and LindenGrove, the union filed this action contending, *inter alia*, that the action of the board was void under sec. 49.14(3), Stats.[3]

---

[3]The union's complaint also sought a declaratory ruling that the county board's action violated the Municipal Employment Relations Act (MERA), sec. 111.70 *et seq.*, Stats., by refusing to bargain the lease/sale decision. The county's counterclaim also sought a declaratory ruling that the board action did not violate the MERA. The union subsequently dismissed its MERA claims voluntarily. However, these claims remained in the case by virtue

The county answered and counterclaimed for a declaratory ruling that the agreements did not violate the statute.

■

As already noted, the parties do not dispute that this issue was appropriate for resolution by summary judgment. When reviewing a summary judgment ruling, we employ the same methodology as that utilized in the trial court, and we are not required to give any deference to the trial court's ruling. *See Wisconsin Fin. v. Garlock,* 140 Wis. 2d 506, 511, 410 N.W.2d 649, 651 (Ct. App. 1987). Since this methodology is well known, *see In re Cherokee Park Plat,* 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582–83 (Ct. App. 1983), and since the parties accept its use here, we will not repeat it.

■

The union's disagreement lies with the legal conclusion drawn by the trial court from the undisputed facts as applied to sec. 49.14(3), Stats. The interpretation of a statute presents a question of law, *Wisconsin Finance* at 515, 410 N.W.2d at 653, as does the application of undisputed facts to a statute. *See In re Guardianship of K.N.K.,* 139 Wis. 2d 190, 208, 407 N.W.2d 281, 289 (Ct. App. 1987). We also review such determinations without deference to the trial court ruling. *Id.*

Although the union's quarrel is not with the meaning of sec. 49.14(3), Stats., we nonetheless begin our analysis with the observation that the statute is clear and unambiguous on its face. It forbids a county from contracting away the administration and man-

---

of the county's counterclaim. None of the MERA claims is before us on appeal.

agement of a county home. However, a county is not duty bound to undertake the establishment of a county home. "Each county *may* establish a county home for the relief and support of dependent persons pursuant to s. 46.17." Sec. 49.14(1) (emphasis added).

The discretion to establish a county home carries with it, we conclude, the discretion to abandon such an operation. An examination of the summary judgment record in this case satisfies us that the county made the policy decision to abandon its county home operation at Northview Home and then carried out that decision in its transaction with LindenGrove.

Supervisor Nabke's affidavit demonstrates that the county board became increasingly concerned about the financial drain which Northview Home presented. The study committee was formed for the express purpose of addressing this problem and exploring alternatives for the operation of the facility. Ultimately, the study committee recommended to the county board that the county discontinue its operation of Northview Home. In making this recommendation, the committee effectively rejected those proposals from the private sector which offered only managerial services.

In conjunction with this decision, the study committee, and ultimately the county board, also had to face the obvious human consequence of its action—the effect of the decision on the present residents of Northview Home and those who might expect to use the facility in the future. The solution was to seek out a responsible private health care provider which would purchase the county's business and lease the county's facility, and which would further commit to

meet the county's future needs for nursing and retirement care. This the county did.

The agreement between the county and Linden-Grove does not retain the county in the business of operating a county home. To the contrary, the agreement (1) expressly recites the county's intention to withdraw from the nursing home business; (2) expressly recites the county's intention to terminate its operation of Northview Home; (3) expressly requires the county to relinguish its license to operate Northview Home; and (4) expressly prohibits the county from operating any skilled or intermediate care nursing or retirement living facility during such time as LindenGrove owns or operates any skilled nursing beds within the county.[4]

The entire summary judgment record in this case does not support the union's claim that LindenGrove has merely been installed as the operator of Northview Home on the county's behalf[5] —an action which sec. 49.14(3), Stats., would apparently prohibit. Rather, the record unequivocally demonstrates that the county terminated its county home operations, conveyed the home's assets, and leased the physical plant

[4]The term of the lease between the county and LindenGrove is eighteen months, a period during which it is contemplated that LindenGrove will complete construction of three new nursing home facilities to be located throughout the county.

[5]The union contends that it is not arguing that the agreement between the county and LindenGrove is a "subcontract" for the operation of Northview Home. Despite these protestations, we conclude that this remains the nub of the union's argument. By way of example, we note that the union's reply brief argues that "under the terms of the lease agreement, LindenGrove will operate the County's Northview Home."

to LindenGrove, which operates Northview Home as a private health care facility independent of any county control or authority.

*By the Court.*—Judgment affirmed.