Jerry TEAGUE, Plaintiff-Respondent,†

v.

BAD RIVER BAND OF the LAKE SUPERIOR TRIBE OF CHIP-
PEWA INDIANS, Defendant-Appellant. [Case No.
98–3150]

Jerry TEAGUE, Plaintiff-Respondent,†

v.

BAD RIVER BAND OF the LAKE SUPERIOR TRIBE OF CHIP-
PEWA INDIANS, Defendant-Appellant,

FIRST FINANCIAL BANK, Garnishee. [Case No. 98–3484]

Court of Appeals

*Nos. 98–3150, 98–3484. Oral argument July 7,
1999.—Decided July 27, 1999.*

(Also reported in 599 N.W.2d 911.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Kevin Osterbauer* of *Bad River Legal Department* of Odanah and *John E. Jacobson* of *Jacobson, Buffalo, Schoessler & Magnuson Ltd.* of Minneapolis, Minnesota. There was oral argument by *John E. Jacobson*.

On behalf of the plaintiff-respondent there was a brief and oral argument by *Michael P. Erhard* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.* of Madison.

Before Cane, C.J., Myse, P.J., and Hoover, J.

MYSE, P.J. The Bad River Band of the Lake Superior Tribe of Chippewa Indians (Band) appeals a judgment awarding damages against the Band for breach of 1993 and 1995 employment contracts with Jerry Teague. The Band contends the circuit court erred by: (1) refusing to give full faith and credit to a tribal court judgment declaring the employment contracts null and void pursuant to § 806.245, STATS.; (2) finding that the Band was estopped from arguing as an affirmative defense that the employment contracts had not received federal approval as required by the Band's corporate charter; (3) excluding all members of the Band from the jury pool; (4) excluding three of the Band's exhibits because they constituted "settlement documents;" and (5) refusing to give jury instructions on tribal officials' "apparent authority" and the Band's corporate charter requirements regarding contracts.

The Band also appeals an order dismissing its motion to dismiss Teague's garnishment complaint.[1]

Because the circuit court was required to give full faith and credit to the tribal court judgment declaring the employment contracts null and void and therefore unenforceable, we reverse the judgment with directions to dismiss Teague's complaint. The garnishment complaint is predicated on the judgment we now reverse. Accordingly, we also reverse the circuit court's order denying the Band's motion to dismiss the garnishment complaint. Because this conclusion resolves the litigation, we need not address the Band's other claims of error. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (only dispositive issues need be addressed).

## BACKGROUND

The Bad River Band of the Lake Superior Tribe of Chippewa Indians is a federally recognized Indian tribe possessing inherent powers of self-government over its members and territory pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 476. The Band has created a tribal enterprise, the Bad River Casino, which operates on the Bad River Reservation in accordance with the Indian Gaming Regulatory Act, 25

---

[1] After judgment was awarded on Teague's breach of contract action, the Band appealed. Teague initiated a garnishment action based on the judgment. The Band moved to dismiss the garnishment action, which the circuit court denied. The Band filed a petition to this court seeking permission to appeal that decision and to consolidate the garnishment appeal with its appeal of the underlying action. By this court's order, dated January 21, 1999, we granted the Band permission to appeal the garnishment dismissal and ordered the appeals consolidated.

U.S.C. §§ 2701 et seq. The Band hired Jerry Teague in April 1993 to serve as the casino's general manager. Teague alleges that he and the Band entered into two written employment contracts, one dated November 1993, and the other dated March 1995. Teague was terminated without good cause in July 1995. He filed this action in November 1995 seeking to compel arbitration under the contracts, or, in the alternative, to recover damages for the alleged breach of those contracts. The Band moved to dismiss on the grounds that it was acting as a governmental entity under its constitution when it employed Teague and was therefore immune from suit on sovereign immunity grounds.

The circuit court denied the Band's motion in a September 1996 order. It concluded that the presence of an arbitration clause in the contracts waived the Band's sovereign immunity. It also concluded that the casino, as an economic enterprise of the Band, operated under the Band's corporate charter, which contained a "sue and be sued" clause, thus waiving the Band's sovereign immunity. The Band did not appeal this decision. In October, the Band amended its answer to add an affirmative defense alleging that the contracts were invalid because they lacked Bureau of Indian Affairs (BIA) and tribal council approval as required by the Band's corporate charter. Teague did not object to the amended answer.

Thereafter, in December 1996, the Band filed a complaint in the Bad River Tribal Court seeking a declaration on the validity of the 1995 contract. On January 7, 1997, the Band amended its complaint to seek a declaration on the validity of both contracts. The Band asserted that neither of the contracts had received either tribal council or BIA approval as required by the Band's corporate charter. On January

15, 1997, the Band moved to stay the circuit court proceedings. The Band contended that because the validity of the contracts and the tribal chairperson's authority to act independently of the tribal council raised fundamental questions of tribal law, comity and the tribal exhaustion doctrine required that the circuit court defer to the tribal forum so that the tribe would have the first opportunity to interpret its own laws.

On February 5, 1997, the circuit court denied the Band's motion for a stay concluding that the issues raised in the tribal court were not dispositive of the issues pending in circuit court and that the tribe had no body of contract law of its own to apply. Apparently, the issue raised before the tribal court concerned the chairperson's actual authority to act on behalf of the tribal council, while the circuit court issue raised the chairperson's apparent authority to act on behalf of the tribal council. Teague then requested an order from the circuit court preventing the Band from going beyond the issues then pending in tribal court. The circuit court denied the request.

Consequently, on March 5, 1997, the Band filed a second amended complaint in tribal court that addressed the contracts' formation and both the actual and apparent authority of the tribal chairperson to act on behalf of the tribal council. While Teague acknowledged personal service of the Band's complaint and participated in discovery, which was acknowledged as conducted jointly as part of both proceedings, he did not participate in the tribal court proceedings. In light of Teague's failure to plead, the Band moved for a default judgment and filed copies of deposition transcripts taken jointly in the two cases. The tribal court conducted a hearing during which it heard argument from the Band. The tribal court made findings of fact

and conclusions of law, holding that both employment contracts were invalid because neither the tribal council nor the BIA had approved the documents, as the Band's corporate charter requires. Accordingly, the tribal court granted the Band's motion for default judgment.

The Band then returned to circuit court and moved to have the tribal court judgment granted full faith and credit pursuant to § 806.245, STATS. The circuit court denied the Band's motion, holding that the tribal court's default judgment: (1) failed to adhere to the Wisconsin rule regarding the assumption of jurisdiction by two courts of the same state; and (2) did not satisfy the requirements of § 806.245(4).

The case proceeded to jury trial. Teague moved to exclude all members of the Bad River Band from the jury pool because of their financial interest in the trial's outcome. The court granted the motion without conducting an individual inquiry of those persons, concluding that all Band members could be presumed to have a financial interest in the trial's outcome. As a result, four Band members were excluded from the jury pool.

Teague also filed a motion to exclude the Band's affirmative defense that the contracts were invalid because they were not approved by the BIA or tribal council as required under the Band's corporate charter. At the close of trial, the court concluded that because none of the parties to the contract believed that BIA approval was required, the Band was equitably estopped from asserting lack of BIA approval as a defense.

During the trial, the court sustained objections to the Band's introduction of three documents, defendant's proposed exhibits 102, 103 and 104. The court

excluded the documents on the grounds that they constituted inadmissible settlement documents under § 904.08, STATS.

Additionally, the court refused to give two jury instructions the Band proposed. One instruction would have instructed the jury to determine the validity and existence of the contracts in light of the Band's corporate charter requirements. The second instruction would have instructed the jury that because the Band was acting as a government, the Band could not be bound on the theory of the apparent authority of a Band's agent. The court declined to give either instruction.

Ultimately, the jury found that the 1993 contract was valid and enforceable and that it was validly and enforceably modified by the 1995 contract. Teague then obtained an order directing the Band to participate in arbitration, through which he recovered an award in the amount of $390,199.42. The Band appealed the judgment. Teague subsequently commenced a garnishment action, and the Band moved to dismiss. The court denied the Band's motion to dismiss, and the Band sought permission to appeal. This court granted the Band permission to appeal the garnishment action and consolidated both appeals.

## ANALYSIS

The Band contends that the circuit court erred by failing to give full faith and credit to the tribal court judgment, which concluded that the employment contracts between Teague and the Band were unenforceable because they lacked the requisite BIA and tribal council approval under the Band's corporate charter. The Band claims that the provisions of § 806.245, STATS., obligated the circuit court to grant

588

the tribal court judgment full faith and credit. Section 806.245(4), STATS., provides:

> **(4)** In determining whether a tribal court judgment is a valid judgment, the circuit court on its own motion, or on the motion of a party, may examine the tribal court record to assure that:
>
> (a) The tribal court had jurisdiction of the subject matter and over the person named in the judgment.
>
> (b) The judgment is final under the laws of the rendering court.
>
> (c) The judgment is on the merits.
>
> (d) The judgment was procured without fraud, duress or coercion.
>
> (e) The judgment was procured in compliance with procedures required by the rendering court.
>
> (f) The proceedings of the tribal court comply with the Indian civil rights act of 1968 under 25 USC 1301 to 1341.

Teague contends, however, that the tribal court judgment is not entitled to full faith and credit because it fails to meet the requirements of § 806.245(4)(c), requiring that the tribal court judgment be on merits, and § 806.245(4)(d), requiring that the tribal court judgment be obtained without fraud, duress and coercion.

 The application of the full faith and credit statute presents a question of statutory interpretation which we review without deference to the circuit court's determination. *See Gonzalez v. Teskey*, 160 Wis. 2d 1, 7–8, 465 N.W.2d 525, 528 (Ct. App. 1990) Further, the

application of the statute to undisputed facts is a question of law, also subject to a de novo standard of review. *See id.* While we appreciate and consider the circuit court's analysis of the statutory interpretation, we must independently determine the meaning and effect of the statute as it applies to the facts before us. *Aiello v. Village of Pleasant Prairie*, 206 Wis. 2d 68, 70, 556 N.W.2d 697, 699 (1996). The primary goal of statutory interpretation is to determine the legislature's intent. *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 271, 580 N.W.2d 233, 242 (1998). First, we examine the plain language of the statute. *Id.* If the plain language of the statute is unambiguous, the statute's language is the sole source from which legislative intent is determined. *Stockbridge Sch. Dist. v. DPI*, 202 Wis. 2d 214, 220, 550 N.W.2d 96, 98 (1996). If the statute is ambiguous we may resort to extrinsic sources in an attempt to determine legislative intent. *Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25, 559 N.W.2d 563, 566 (1997). We conclude that the statute's language is unambiguous and therefore examine its application to the undisputed facts.

Teague contends that the tribal court judgment was not rendered on its merits pursuant to § 806.245(4)(c), STATS. Teague does not dispute that under normal circumstances the tribal court judgment would be regarded as a judgment on its merits. He concedes that absent the unusual circumstances of this case, the tribal court judgment is on the merits, even though the judgment was a default judgment.[2] Teague posits, however, that because this matter was pending

---

[2] The Wisconsin Supreme Court has held that a default judgment is conclusive to the material issuable facts pleaded in the declaration or complaint. *Klaus v. Vander Heyden*, 106 Wis. 2d 353, 359–60, 316 N.W.2d 664, 668 (1982).

first in the Wisconsin circuit court, and because the circuit court had assumed jurisdiction and had pronounced that it was reserving for its determination the issues of the contracts' validity and enforceability when the Band sought to stay the circuit court proceedings, the tribal court could not reach the merits of those issues. Consequently, according to Teague, because the circuit court properly reserved to itself the questions of the validity and enforceability of the employment contracts, the tribal court determination on those issues was not a decision on the merits as required by 806.245(4)(c). We do not agree.

Indian tribes are considered "domestic dependent nations" which "exercise inherent sovereign authority over their members and territories." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991). Thus, Indian tribes are separate sovereigns under federal law. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 222 (1987). When the courts of two separate sovereigns both have jurisdiction over the same litigation, the jurisdiction first rendering a judgment is generally entitled to have that judgment receive full faith and credit by the other jurisdiction. RESTATEMENT (SECOND) OF CONFLICTS § 86 and cmt. a (1971).

While this creates a race to the courthouse, there is a constitutional mandate requiring that full faith and credit be granted to the judgments of a state by the remaining states of the union. UNITED STATES CONST. art. IV, § 1. Wisconsin's adoption of § 806.245(4), STATS., is a statutory declaration that tribal court judgments receive full faith and credit by this state's courts. Thus, if a tribal court judgment meets the statutory requirements, this state's courts are bound to grant it full faith and credit. The statutory requirements con-

591

tain no language addressing the circuit court's discretion to grant full faith and credit to tribal court judgments based upon the jurisdiction in which the litigation was first filed. Furthermore, the statute contains no language authorizing a circuit court in which litigation was first filed to remove litigation issues from a tribal court that has proper jurisdiction over the subject matter and persons of the litigation.

While we understand and sympathize with the circuit court's desire to resolve the litigation issues before it because the litigation was first filed with the circuit court and had been pending for a number of months before the tribal court complaint was filed, we can find no authority for the proposition that the circuit court is empowered to deprive the tribal court of the authority to address issues that are properly raised before it. The circuit court's attempt to reserve for its jurisdiction the issues regarding the contracts' validity and enforceability, while understandable, is without legal authority. The tribal court had proper jurisdiction over the issues and the litigation even though the tribal court complaint was filed subsequent to the circuit court litigation. The tribal court, having rendered its judgment first, determined the issue of the contracts' enforceability and that judgment is on its merits.

Teague attempts by analogy to extend rules that exist to resolve similar disputes among different courts of concurrent jurisdiction within the state to the issues before us. In *Syver v. Hahn,* 6 Wis. 2d 154, 94 N.W.2d 161 (1959), our supreme court concluded that among this state's circuit courts, the court that first acquires jurisdiction retains jurisdiction and may determine the entire controversy. *Id.* at 159–60, 94 N.W.2d at 164. Even though another circuit court of this state may have jurisdiction over the same issues, the court in

which the action is first brought retains jurisdiction and the court within which the action is subsequently filed may not interfere with the first court's disposition of the litigation before it. *Id*. Teague suggests that the same rule should be applied between the circuit court and the tribal court. According to Teague, because this litigation was filed first with the circuit court, the tribal court had no authority to proceed to resolve the issues the circuit court reserved when it announced its determination to litigate the issue of the contracts' enforceability.

This argument must fail for the important reason that the tribal court is a court of a separate sovereign entity. This state's circuit courts have no authority to limit a separate sovereign's power from addressing litigation issues that are properly brought before its court. Because the tribal court and the circuit court are not courts of concurrent jurisdiction, the *Syver* rule governing the circuit courts of this state does not apply.

■ We conclude that when the courts of two sovereign entities both have jurisdiction to resolve litigation before them, the courts of one sovereign have no power to limit, modify or control the power of the other court to resolve litigation properly brought before it. Each court is free to render the judgments it is empowered to issue by the rules of the sovereign entity it serves. The jurisdiction first issuing its decision may do so without regard to the fact that this litigation is pending in courts of a separate sovereign. RESTATEMENT, supra. Here, the tribal court issued its judgment, and the sole question before us is whether that judgment is entitled to full faith and credit under the statutory provisions of § 806.245, STATS. The tribal court's judgment does not cease to be on its merits merely because the same

issues were pending before the court of a separate sovereign or merely because that sovereign's court expressed its intention to address the issues in litigation before it.

Teague next contends that the tribal court judgment is not entitled to full faith and credit because it fails to meet § 806.245(4)(d), STATS. Teague contends that the circuit court's statements, made when ruling on the motion to stay the circuit court proceedings, imposed a duty on the Band's counsel to explicitly place the circuit court's pronouncements before the tribal court so that the tribal court could grant comity to the circuit court if it so chose.[3] Teague concludes that because the Band's attorneys did not place this information before the tribal court, the judgment that resulted was fraudulently procured. Teague further asserts that the filing of the same action involving the same issues before the tribal court placed Teague in the untenable position of having to submit either to tribal court jurisdiction and thus be required to litigate in two forums simultaneously, or to ignore the tribal court litigation and run the risk that an adverse judgment would result. Teague concludes that such a dilemma is coercion within the meaning of § 806.245(4)(d), STATS., and therefore the tribal court judgment is not entitled to full faith and credit.

The circuit court declared the following at the time the motion to stay the circuit court proceedings was raised:

---

[3] "Comity is defined as the principle that courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state [or jurisdiction] out of deference and mutual respect." *Local 913 v. Manitowoc County*, 140 Wis. 2d 476, 484, 410 N.W.2d 641, 645 (Ct. App. 1987).

> [N]o matter what the Tribe does concerning this declaratory judgment action, which is limited to interpreting whether . . . the contracts under which [Teague] worked are void because the people that signed them on behalf of the Tribe lack the legal authority to do so under Tribal law. That is not going to be the end of this case. . . . If it was going to be determinative, I might go along with it but it's not going to be. . . . [T]his action was here first.
>
> . . . .
>
> The decision ultimately is going to turn on Wisconsin contract law. . . . The contracts are to be governed where they are entered into. This contract was entered into in Ashland County. It may have been entered into on the Reservation in Ashland County, but the reservation doesn't have its own body of contract law so Wisconsin contract law is going to apply.

Teague claims that the Band's attorneys' failure to fully advise the tribal court of these pronouncements renders the judgment fraudulently obtained. We conclude this argument must fail for a variety of reasons. First, we note that Teague's counsel could have presented the information to the tribal court as well as the Band's counsel. Teague does not explain, nor do we understand why the duty, if one existed, was exclusively placed upon the Band's attorneys. Teague had ample opportunity to advise the tribal court of the circuit court's pronouncement and to seek comity from the tribal court, but failed to do so. Teague's attempt to place the burden of making the disclosure on the party asserting that the tribal court can properly address the litigation ignores the responsibility of the other party attempting to limit the tribal court's assumption of jurisdiction over certain issues.

Moreover, the Band's attorneys claim that the tribal court was fully advised of the fact that litigation involving these issues was pending before the Ashland County Circuit Court, that the circuit court judge had declined to stay the proceedings, and, at least by inference, was intending to complete the litigation pending before it. While the record does not show the exact extent to which the tribal court was advised of the circuit court's statements surrounding his denial of the motion to stay the circuit court proceedings, it is clear that the tribal court was at least generally familiar with the Ashland County litigation's status. Since the duty to demonstrate that the tribal court judgment was obtained by fraud rests on the party so claiming, the absence of evidence as to the extent of the tribal court's awareness of the circuit court judge's pronouncements requires that we reject this argument as unproven.

Finally, there is no indication, nor does Teague present any evidence, that the tribal court would have declined to exercise jurisdiction over the issues of contract enforceability because the matter was pending in Ashland County Circuit Court or because the circuit court expressed its intention to address those issues in the litigation pending before it. Because the tribal court was at least generally familiar with the litigation's status in circuit court and the dispute concerning the tribal court's exercise of jurisdiction, the tribal court could have addressed the comity issue if it had desired to do so. Because the tribal court was not restricted in its jurisdiction to address the issues before it by virtue of the circuit court's pronouncements, we see no evidence that the tribal court judgment was obtained by fraud.

We also reject Teague's contention that the judgment was obtained by coercion. The complaint of

coercion identifies matters endemic to all instances when the courts of two individual sovereigns have jurisdiction over the same litigation. We see nothing unique about the dilemmas created for Teague by the filing of the complaint before the tribal court and conclude that those problems are nothing more than those facing every litigant in similar circumstances. This is not coercion within the meaning of the statute.

Because we conclude that the tribal court judgment meets each of the statutory requirements under § 806.245(4), STATS., that judgment was entitled to full faith and credit before the circuit court. We note that it appears that Teague challenges only § 806.245(4)(c) and (d) and does not challenge the remaining statutory criteria. The circuit court's failure to give full faith and credit to the tribal court judgment is error. The tribal court judgment conclusively resolved the issues as to the validity and enforceability of the employment contracts between Teague and the Band. Because it is binding on the circuit courts of this state under § 806.245, the enforceability issue has been resolved not only before the tribal court but also before the circuit courts of this state. We conclude that the tribal court's judgment that the employment contracts are unenforceable requires that Teague's complaint pending in the circuit court be dismissed with costs as authorized by law.

Having concluded that the tribal court's judgment is entitled to full faith and credit, we wish to acknowledge certain public policy concerns that our determination raises. The first issue addresses a concern wherein a second sovereign declines to grant comity to a first sovereign's jurisdiction. While we emphatically do not subscribe to the view that the tri-

597

bal court is biased or partial to litigation brought before it between members of the tribe and tribal non-members, Teague has at least expressed concern that, as a matter of public policy, such litigation presents a problem for non-tribal members. Teague postulates that in matters that are filed in the circuit court and where extensive litigation has occurred, including the issuance of orders that may be adverse to the tribe, the tribe can file the same litigation in the tribal court and procure a judgment before the conclusion of the circuit court litigation thereby usurping the circuit court's power to determine the issues before it. Teague suggests that such a "ploy" allows litigation between tribal members and non-tribal members to be resolved by a tribal court without regard to the litigation properly pending in the circuit court involving the same issues.

We further express concern over the absence of any protocols addressing the conflicts that arise in such a case. Those conflicts are best addressed by the establishment of procedures or protocols addressing the potential conflicts that might occur. We note that federal and state courts have similar problems and have sought to address these conflicts by establishing general protocols between the jurisdictions when conflicts arise. To further this end, committees involving both state and federal judges have been created to facilitate the relationship between these two jurisdictions. The power to implement such an approach between the tribes and the state rests entirely with such sovereigns, but we suggest that each consider establishing a vehicle to address the mutual concerns that exist as a result of the conflicts that might arise. These concerns are endemic to the problem of two separate sovereigns each having jurisdiction over the same litigation. We are powerless to do anything other than recognize the

dilemmas frequently created when more than a single sovereign takes and exerts jurisdiction over the same litigation.

We conclude that the circuit court was required to give full faith and credit to the tribal court judgment declaring the employment contracts null and void and therefore unenforceable. Therefore, we reverse the judgment with directions to dismiss Teague's complaint with costs as authorized by law. Because Teague's garnishment complaint is predicated on the judgment we now reverse, we also reverse the circuit court's order denying the Band's motion to dismiss the garnishment complaint and direct the circuit court to dismiss that complaint. Because this conclusion resolves the litigation, we need not address the Band's other claims of error. *See Sweet,* 113 Wis. 2d at 67, 334 N.W.2d at 562 (only dispositive issues need be addressed).

*By the Court.*—Judgment and order reversed and cause remanded with directions.