# IN RE the CUSTODY OF Christina Natalie SENG-STOCK, and Roland Richard Sengstock, Jr.: Roland SENGSTOCK, Sr., Appellant,

v.

# SAN CARLOS APACHE TRIBE, Respondent.

Court of Appeals

*No. 90-1967. Oral argument July 23, 1991.—Decided October 9, 1991.*

(Also reported in 477 N.W.2d 310.)

On behalf of the appellant the cause was submitted on the briefs and oral argument by *W.M. McMonigal* of Berlin.

On behalf of the respondent the cause was submitted on the brief and oral arguments by *Steve M. Titla* of Globe, Arizona and *Dawn M. Sabel* of Fond du Lac.

Before Nettesheim, P.J., Brown and Anderson, JJ.

ANDERSON, J. Roland Sengstock, Sr. (Roland) appeals from the order of the circuit court declining to exercise its jurisdiction over a child custody dispute between Roland and his estranged wife who is an enrolled member of the San Carlos Apache Tribe. On appeal Roland argues that the circuit court erred in allowing the San Carlos Apache Tribe to intervene and in refusing to exercise its jurisdiction because of pending proceedings in the tribal court. We affirm the circuit court; it properly granted the motion to intervene because of the tribe's protectible interest and, in this case, the doctrine of comity requires the circuit court to give recognition and enforcement to the tribal court's orders and to decline to exercise jurisdiction under the Uniform Child Custody Jurisdiction Act.

Roland and Edris Sengstock (Edris) were married in California in 1974 and four children were born of the marriage; however, only R.R.S., born March 17, 1983, and C.N.S., born November 3, 1981, are the subjects of this custody dispute. Edris, R.R.S. and C.N.S. all are enrolled members of the San Carlos Apache Tribe and Edris is a resident of the San Carlos Apache reservation in Arizona.

Roland and Edris separated in 1983 and Edris kept custody of the children. In 1987, Edris obtained an *ex*

*parte* order from the San Carlos Tribal Juvenile Court which awarded her temporary custody of the children.[1] Nearly eighteen months later Roland filed a petition for temporary custody with the San Carlos Apache Tribal Court in which he sought the temporary custody of the children. After a hearing before the Honorable Jackson Henry, Sr., Tribal Juvenile Court Judge, and a home evaluation, an order continuing temporary custody with Edris was issued by the tribal court. Edris commenced a divorce action against Roland in the tribal court in March of 1990.

Sometime between the temporary custody hearing in the tribal juvenile court and the commencement of this action, Roland brought R.R.S. and C.N.S. to Wisconsin without the permission of Edris. As a result of Roland's actions, the tribal court issued an order in May of 1990 requiring that the children be returned to the reservation. After representatives of the tribe attempted to serve this order on Roland, he filed a petition for temporary custody of R.R.S. and C.N.S. with the Fond du Lac circuit court pursuant to ch. 822, Stats., the Uniform Child Custody Jurisdiction Act (UCCJA).

The circuit court granted the motion of the San Carlos Apache Tribe to intervene. The court then granted the tribe's motion to dismiss on the grounds that the court lacked subject matter jurisdiction. The court found that the provisions of the UCCJA applied; it further held that the San Carlos Apache Juvenile Court had exclusive jurisdiction as a result of Roland's petition for temporary custody.

---

[1] The tribal juvenile court judge waived notice to Roland on Edris's representations to the tribal juvenile court that Roland was planning to kidnap the children and take them off the reservation.

There are two principal issues which are dispositive of this appeal: (1) whether the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-63, applies to intrafamily custody disputes; and (2) whether under the UCCJA the San Carlos Apache Juvenile Court has exclusive jurisdiction.[2]

The issues raised present questions of law which we review independently, without deference to the circuit court, although we do value the opinion of the court. *See State ex rel. R.G. v. W.M.B.,* 159 Wis. 2d 662, 666, 465 N.W.2d 221, 223 (Ct. App. 1990).

## I. Applicability of Indian Child Welfare Act

In the circuit court and on appeal the parties debate the applicability of the ICWA.[3] The San Carlos Apache Tribe argues that the ICWA provides a basis to support the circuit court's dismissal of Roland's petition. Roland, arguing that the ICWA does not apply, cites 25 U.S.C.

---

[2]During oral arguments this court questioned counsel about the failure of the circuit court to appoint a guardian *ad litem* for R.R.S. and C.N.S. before it considered the tribe's motions. The appointment of a guardian *ad litem* is required in actions under the UCCJA. *See Mayer v. Mayer,* 91 Wis. 2d 342, 358-59, 283 N.W.2d 591, 599-600 (Ct. App. 1979). However, the appointment is required to be made only after mediation has failed, sec. 767.11(12)(b), Stats., or if the court determines that an earlier appointment is necessary to protect the children's interests. Section 767.045(2), Stats.

[3]In general the ICWA vests exclusive jurisdiction of child custody proceedings involving an Indian child in the appropriate tribal court; grants to the tribe the right to intervene in any state court proceeding involving the custody of a child; and requires the states to give full faith and credit to custody decisions of the tribal court. *See* 25 U.S.C. § 1911.

§ 1903(1) which he argues clearly excludes intrafamily custody disputes from the definition of "child custody proceedings" subject to the ICWA.

We agree with Roland that since this is an intrafamily dispute the ICWA does not apply. The language of 25 U.S.C. § 1903(1) is unambiguous. While it gives Indian tribes exclusive jurisdiction to determine the custody of Indian children, it expressly applies to proceedings to determine foster care placement, the termination of parental rights, preadoptive placement and adoptive placement. Exclusive jurisdiction was not given in proceedings to determine the custody of children in a divorce proceeding.

Our view that the ICWA does not apply is consistent with that of other jurisdictions. *See DeMent v. Oglala Sioux Tribal Court,* 874 F.2d 510, 514 (8th Cir. 1989). It also is consistent with the interpretation given the ICWA by the Department of the Interior, the agency charged with developing guidelines to aid in interpreting that act:

> Child custody disputes arising in the context of divorce or separation proceedings or similar domestic relations proceedings are not covered by the Act so long as custody is awarded to one of the parents.

Guidelines for State Courts; Indian Child Custody Proceedings, § B.3(b), 44 Fed. Reg. 67,584, 67,587 (1979). The ICWA concerns cases where custody of a Native American child is to be given to someone other than either one of the parents. This is not such a case. This is an intrafamily dispute; therefore, we hold that the ICWA does not apply. Appropriately the circuit court did not base its decision to dismiss on the ICWA.

## II. Applicability of Uniform Child Custody Jurisdiction Act

The circuit court concluded that under the UCCJA, dismissal was warranted for several reasons: (1) it lacked jurisdiction because a custody proceeding was pending in the tribal court; (2) Roland previously invoked the jurisdiction of the tribal court in his failed attempt to gain custody and the petition was nothing more than "forum-shopping"; and (3) Roland did not fully inform the circuit court of his active participation in earlier custody proceedings.[4]

A threshold issue is the standing of the San Carlos Apache Tribe to intervene in a child custody proceeding. Without objection from Roland, the circuit court granted the tribe's motion to intervene. On appeal Roland now argues that, absent the ICWA, the tribe does not have an interest that permits it to intervene in

---

[4]The UCCJA requires the party filing the pleading that invokes the jurisdiction of the court to include information, under oath, concerning whether the party has been involved in any other litigation in any state pertaining to the custody of the children. Section 822.09(1)(a), Stats. Roland's petition did include information that there was a pending divorce action commenced by Edris in the San Carlos Apache Tribal Court and had attached as exhibits the *ex parte* custody order issued by the tribal court on June 8, 1987, and the tribal court's order of July 27, 1990 to return R.R.S. and C.N.S. to Edris on the reservation. Inexplicably, Roland did not include information in his initial pleading that he had filed a petition for temporary custody in the tribal court; that the tribal court conducted a hearing and, after a home study, continued custody with Edris; and that Roland had brought R.R.S. and C.N.S. to Wisconsin contrary to the custody order of the tribal court. This essential information was brought to the circuit court's attention in the pleadings filed by the San Carlos Apache Tribe.

this proceeding. Roland contends that the UCCJA does not provide a clear answer to the standing question; that the tribe does not have any right derivative of Edris's right; and that the tribe has no connection with the children.

Section 803.09(1), Stats., provides:

> Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the . . . transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

Because neither ch. 767 nor ch. 822, Stats., prescribes a different procedure for intervention in child custody proceedings, sec. 803.09(1) governs if the tribe has a protectible interest. Section 801.01(2), Stats.

The tribe's protectible interest appears on the face of the order to return R.R.S. and C.N.S. to the reservation. The order recites that "[t]he minor children are wards of the San Carlos Apache Juvenile Court," indicating that the tribe, through its court, has an interest in the custody of the minor children. We are satisfied that this provides the tribe with an identifiable and protectible interest that warranted the circuit court's order permitting the tribe to intervene.[5]

---

[5]Intervention of the tribe also fulfills one of the purposes of the UCCJA, which is to "[p]romote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child." Section 822.01(1)(h), Stats. A common thread throughout the UCCJA is the need for courts from different juris-

We now turn to the principal issue on this appeal: Did the circuit court err in granting recognition and enforcement to the orders of the tribal court and in finding that under the UCCJA it did not have subject matter jurisdiction because of pending custody proceedings before the San Carlos Apache Tribal Court?

The UCCJA requires the recognition and enforcement of custody orders issued by the courts of another *state*. A *state* is defined as "any state, territory, or possession of the United States, the commonwealth of Puerto Rico, and the District of Columbia." Section 822.02(10), Stats. The UCCJA also encourages the recognition and enforcement of custody orders issued by legal institutions of a *foreign country,* provided that reasonable notice and an opportunity to be heard was given to all affected persons. Section 822.23, Stats. However, the San Carlos Apache Indian Tribe is neither a *state* nor a *foreign country.* Consequently, a circuit court is not required to acknowledge a tribal court custody order under the UCCJA. And, because the tribe is not a state, territory, possession or commonwealth, the judgments and orders of its tribal court are not entitled to "full faith and credit" under U.S. Const. art. IV, § 1, and 28 U.S.C. §§ 1738, 1738A.

Notwithstanding the somewhat ambiguous status of the tribe, we conclude that in this case the temporary custody order of the tribal court should be recognized and enforced under the principle of comity.

---

dictions to assist each other in resolving custody proceedings. By granting the tribe's motion to intervene, the circuit court augmented the means by which courts can exchange information.

> Comity is defined as the principle that courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state [or jurisdiction] out of deference and mutual respect.

*Local 913 v. Manitowoc County,* 140 Wis. 2d 476, 484, 410 N.W.2d 641, 645 (Ct. App. 1987). "The doctrine of comity results in recognition of a decree of a different state [or jurisdiction] *not entitled to full faith and credit." Hughes v. Fetter,* 257 Wis. 35, 39, 42 N.W.2d 452, 454 (1950), *rev'd on other grounds,* 341 U.S. 609 (1951) (emphasis added). Wisconsin applies the doctrine of comity "unless to do so is contrary to the law, morals, or policy of the state where the action is sought to be maintained." *Id.*

We have reviewed the certified record from the tribal court and under sec. 902.02, Stats., we have taken judicial notice of the constitution, bylaws, law and order code, and juvenile code of the San Carlos Apache Tribe. We conclude that to apply the doctrine of comity to the temporary custody order of the tribal court would not be contrary to the law, morals or public policy of Wisconsin. We also conclude that the procedure used in the tribal court conforms with the requirements of elementary due process; from our review of the record in this case we have determined that Roland was given adequate advance notice of the proceedings in the tribal court and a reasonable opportunity to be heard.[6]

---

[6]Roland has argued that the tribal court procedure violated his due process rights. At oral argument he pinpointed the violation as his failure to receive notice of the temporary order continuing custody of the minor children with Edris. However, Roland failed to present the circuit court with any evidence that the tribal court failed to notify him of its decision. And, just as important, Roland fails to acknowledge that he left the reservation *before* the tribal court's decision was rendered; this series of

Although this is the first instance of Wisconsin applying the doctrine of comity to an order of a tribal court, other jurisdictions have granted comity to tribal court decisions. *See Fredericks v. Eide-Kirschmann Ford, Mercury, Lincoln, Inc.,* 462 N.W.2d 164, 167–68 (N.D. 1990); Note, *Recognition of Tribal Decisions in State Courts,* 37 Stan. L. Rev. 1397, 1410–11 (1985).

We hold that the circuit court properly applied the doctrine of comity to give full force and effect to the tribal court proceedings. We further hold that under sec. 822.06(1), Stats., the circuit court appropriately declined to exercise its jurisdiction because of the custody proceedings in the San Carlos Apache Tribe Juvenile Court.[7] *See Jones v. Jones,* 54 Wis. 2d 41, 46, 194 N.W.2d 627, 630 (1972).

*By the Court.*—Order affirmed.

---

events permits the reasonable inference that Roland did not receive notice of the temporary order because the tribal court was not aware of his location. We conclude that there was no violation of Roland's due process rights; or, if there was a violation, it was due to Roland's actions.

[7]Section 822.06(1), Stats., provides:

A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.