Jerry TEAGUE, Plaintiff-Respondent-Petitioner,

v.

BAD RIVER BAND OF the LAKE SUPERIOR TRIBE OF CHIP-
PEWA INDIANS, Defendant-Appellant.

Jerry TEAGUE, Plaintiff-Respondent-Petitioner,

v.

BAD RIVER BAND OF the LAKE SUPERIOR TRIBE OF CHIP-
PEWA INDIANS, Defendant-Appellant,

FIRST FINANCIAL BANK, Garnishee.

Supreme Court

*Nos. 98–3150, 98–3484. Oral argument March 2,
2000.—Decided July 6, 2000.*

2000 WI 79

(Also reported in 612 N.W.2d 709.)

385

For the plaintiff-respondent-petitioner there were briefs by *John H. Zawadsky, Michael P. Erhard,*

*Andrew W. Erlandson, Beth Ermatinger Hanan* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.*, Madison, and oral argument by *Michael P. Erhard.*

For the defendant-appellant there was a brief by *Henry M. Buffalo, Jr., John E. Jacobson* and *Jacobson, Buffalo, Schoessler & Magnuson, Ltd.*, St. Paul, Minnesota, and *Kevin Osterbauer* and *Bad River Legal Department*, Odanah, and oral argument by *John E. Jacobson.*

¶ 1. DIANE S. SYKES, J. This case concerns the interpretation of a statute affording full faith and credit to the judgments of tribal courts in this state. Specifically, the case raises the question of whether under Wis. Stat. § 806.245 (1995–96),[1] a tribal court judgment can be denied full faith and credit because a complaint concerning the same subject matter was filed first in state circuit court. The case arises out of a contract dispute between the Bad River Band of the Lake Superior Tribe of Chippewa Indians (the Band) and Jerry Teague, a non-tribal member who was once employed as the general manager of the Band's casino. After Teague's employment with the casino ended, the parties embarked upon a litigation journey, filing overlapping suits in circuit court and tribal court.

¶ 2. Litigation began when Teague filed a complaint in circuit court seeking arbitration pursuant to the terms of his employment contract. Over a year later, the Band filed its own suit in tribal court, challenging the validity of the contract under tribal law. The tribal court reached judgment first, invalidating

---

[1] All further references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

the contract. The Band then moved the circuit court for full faith and credit for the judgment pursuant to Wis. Stat. § 806.245. The motion was denied. The circuit court concluded that under the state's "prior action pending" rule, the tribal court, as a court of concurrent jurisdiction, did not properly have jurisdiction over the matter because the case was filed in circuit court first. *See Syver v. Hahn*, 6 Wis. 2d 154, 94 N.W.2d 161 (1959). The court of appeals reversed, and Teague petitioned for review. We now hold that the prior action pending rule of *Syver* does not apply to these circumstances because an Indian tribal court is a court of an independent sovereign. However, under the circumstances of this case, principles of comity required that the state and tribal courts confer for purposes of allocating jurisdiction between them, in order to avoid both the race to judgment and inconsistent results that occurred here. Accordingly, we reverse.

¶ 3. The Band is a federally recognized Indian tribe, possessing inherent powers of self-government over its members and its territory pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. §§ 461–479. The Band has two fundamental governing documents: its constitution, adopted under section 16 of the Indian Reorganization Act of 1934,[2] and its corporate charter issued by the Secretary of the United States Department of the Interior under section 17 of the same act.[3]

¶ 4. In April 1993, Jerry Teague, a non-tribal member, was hired as the general manager of the Bad River Casino, which the Band operates on its reservation in northern Wisconsin. On November 3, 1993, after a probationary period, Teague and then-Bad

---

[2] 25 U.S.C. § 476 (1983).
[3] 25 U.S.C. § 477 (1983).

River Tribal Chairman Donald Moore, Sr., formalized Teague's employment by signing a three-year contract. The contract set forth the terms of Teague's day-to-day employment at the casino and also stated that disputes over termination "shall be submitted for arbitration under chapter 788, Wisconsin Statutes." On March 15, 1995, Teague and Moore's successor, Elizabeth Drake, signed a new contract containing a similar arbitration clause.

¶ 5. On July 19, 1995, Teague left the Band's employ.[4] In November of that year, he filed a complaint in Ashland County Circuit Court seeking to compel arbitration pursuant to the contracts, and alternately, seeking damages for breach of contract. The Band moved to dismiss, arguing that the arbitration agreement was unenforceable because it stated that disputes over termination should be submitted for arbitration under chapter 788, Wisconsin Statutes, which does not apply to contracts between employers and employees. The Band also invoked its sovereign immunity as a federally recognized Indian tribe. Teague then moved for partial summary judgment on the sovereign immunity issue.

---

[4] The parties dispute the circumstances under which Teague left his job at the casino. Teague contends that he was fired, while the Band maintains that he quit. The tribal court did not reach the issue, instead concluding that because the contracts were not valid, Teague was not entitled to arbitrate the question. The Ashland County Circuit Court found the contracts valid and ordered arbitration. The arbitrator awarded damages. Whatever the case, the issue is not before the court and is not relevant to our determination of whether the tribal court judgment is entitled to full faith and credit under Wis. Stat. § 806.245.

¶ 6. On September 25, 1996, the circuit court, Judge Thomas J. Gallagher, presiding, denied the Band's motion to dismiss, ruling that the reference to the Wisconsin Statutes did not invalidate the arbitration clause because only certain state public sector employment contracts are excluded from the scope of chapter 788. The court also held that the Band implicitly waived its sovereign immunity by including the arbitration clause, since a dispute cannot be arbitrated without such a waiver. Furthermore, the court found that the casino was an "economic affair or enterprise" operating under the Band's corporate charter which contains a "sue and be sued" clause,[5] and thus, it could not invoke sovereign immunity with respect to its casino activities. The Band then amended its answer, adding the affirmative defense that the 1995 contract was not valid because it did not have the approval of the tribal council and the United States Secretary of the Interior as required by the Band's corporate charter.

---

[5] The Bad River Constitution, Article VI, Section 1(f), states:

> Section 1. Enumerated powers. The Tribal Council shall exercise the following powers, subject to any limitations imposed by the Constitution or statutes of the United States, and subject further to all express restrictions upon such powers contained in this Constitution and the attached Bylaws. . . .(f) To manage all economic affairs and enterprises of the Band in accordance with the terms of the charter which may be issued to the Band by the Secretary of the Interior.

The relevant portion of the Corporate Charter states:

> 5. The Band, subject to any restrictions contained in the Constitution and laws of the United States, or in the Constitution and By-laws of the said Band, shall have the following corporate powers, in addition to all powers already conferred or guaranteed by the tribal Constitution and By-laws:. . .(i) To sue and to be sued in courts of competent jurisdiction within the United States. . . .

¶ 7. Then, in December 1996, the Band filed a complaint in the Bad River Tribal Court seeking a declaration on the validity of the 1995 contract, reasserting its claim that the contract lacked the requisite approval of the Tribal Council. The Band amended its tribal court complaint on January 7, 1997, to request a declaration on the validity of the 1993 contract as well.

¶ 8. The Band then filed a motion in the circuit court, contending that under United States Supreme Court precedent, *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. 9 (1987), and *National Farmers Union Insurance Cos. v. Crow Tribe of Indians*, 471 U.S. 845 (1985), the circuit court was required to stay its proceedings until the tribal court ruled on the tribal law challenges to the contracts and all tribal remedies were exhausted. Teague countered that the issue of the contracts' validity was not dispositive, since even if they were not properly executed, he was still entitled to rely on the apparent authority of the tribal officials who signed them.

¶ 9. On February 5, 1997, the circuit court held that in light of Teague's "apparent authority" argument, it was under no obligation to stay its proceedings because the tribal court proceedings would not entirely dispose of Teague's claims:

> [N]o matter what the tribe does concerning this declaratory judgment action that's before it, which is limited to interpreting whether both, it now turns out, of the contracts under which he worked for a considerable period of time are void because the people that signed them on behalf of the tribe lacked the legal authority to do so under Tribal Law. That is not going to be the end of this case, and I fail to see the judicial economy of—of any theory of Tribal

> Exhaustion. . .If it was going to be determinative I might go along with it, but it's not going to be. . .The decision ultimately is going to turn on Wisconsin Contract Law. . . .

The court also expressed its opinion that:

> [T]he Tribal Court is free to go ahead and do whatever they want to do, and they've got a very limited issue here to decide and it would seem to me that they could schedule this case and get those issues out of the way before I ever get to the rest of this case.

¶ 10. The Band returned to tribal court, amending its complaint to include the allegation that given his position with the Band, Teague could not have formed any reasonable belief that would make the contracts valid under an apparent authority analysis. Teague accepted service of the amended tribal court complaint through counsel on March 25, 1997. Teague did not plead responsively in the tribal court, seek a stay of the tribal court proceedings, or appear before the tribal court in order to challenge its personal or subject matter jurisdiction. However, he did participate fully in discovery, which was conducted simultaneously for both the circuit court and tribal court proceedings.

¶ 11. On May 29, 1997, the Band moved for default judgment in tribal court. On July 25, 1997, the tribal court held a hearing and granted the Band's motion, holding that the contracts were invalid because they were not approved by the tribal council. The tribal court rejected Teague's apparent authority argument, concluding that because of his experience with the Band, he could not reasonably have believed that the contracts were valid without the tribal coun-

cil's approval. Teague did not appeal in the tribal court system.

¶ 12. Tribal court judgment in hand, the Band returned to the circuit court seeking full faith and credit under Wis. Stat. § 806.245. Pursuant to the requirements of the statute, the Band submitted a copy of its governing documents and tribal court code, as well as the record of the tribal court proceedings and certifications that the Band grants full faith and credit to the judicial records of Wisconsin courts and to the acts of other state governmental entities.

¶ 13. Teague opposed the motion, arguing that Wis. Stat. § 806.245 incorporates the "prior action pending" rule and thus, the tribal court could not have subject matter jurisdiction because Teague's circuit court complaint was filed first. *See Syver*, 6 Wis. 2d at 154. Teague also asserted that the tribal court did not have personal jurisdiction over him, that the judgment was not on the merits and that it was procured through fraud and coercion.

¶ 14. The circuit court agreed and denied full faith and credit. The court concluded that Wis. Stat. § 806.245 incorporated *Syver*'s prior action pending rule and thus the tribal court was deprived of jurisdiction. The court also held that the tribal court judgment was not on the merits because it was a default judgment and that the Band had engaged in fraud and coercion by filing and pursuing its action in the tribal court. The court did not rule on the personal jurisdiction issue.

¶ 15. After the Band made an unsuccessful attempt to petition the court of appeals for leave to appeal the circuit court's order by permission, a two-day jury trial began in circuit court. The jury found both contracts enforceable. The circuit court then

ordered the parties to arbitrate the question of whether Teague was wrongfully terminated. The arbitrator awarded Teague $390,199.42, and the circuit court entered judgment on September 15, 1998. The Band appealed, arguing that the circuit court erred by failing to give full faith and credit to the tribal court judgment.[6]

¶ 16. The court of appeals reversed, concluding that the prior action pending rule did not render the tribal court judgment invalid under Wis. Stat. § 806.245 because a tribal court is the court of a separate sovereign, not a court of concurrent jurisdiction. *Teague v. Bad River Band of the Lake Superior Tribe of Chippewa Indians*, 229 Wis. 2d 581, 593–94, 599 N.W.2d 911 (Ct. App. 1999). The court of appeals also rejected Teague's arguments that the judgment was obtained through fraud and coercion. *Id.* at 594–96. We accepted review.

¶ 17. Our review requires the interpretation and application of Wis. Stat. § 806.245 to undisputed facts. Thus, it is a question of law that we review de novo. *J.L. Phillips & Assoc., Inc. v. E&H Plastic Corp.*, 217 Wis. 2d 348, 354, 577 N.W.2d 13 (1998). The goal of statutory interpretation is to discern and give effect to the intent of the legislature. *County of Jefferson v. Renz*, 231 Wis. 2d 293, 301, 603 N.W.2d 541 (1999). We first look for that intent in the plain language of the statute. *Id.* If the meaning of the statute is plain and unambiguous, we cannot look beyond the language of

---

[6] In the court of appeals, the Band alleged other errors concerning the selection and instruction of the jury and certain evidentiary rulings. The court of appeals did not address these claims because of the dispositive nature of its decision on the full faith and credit issue and they are not before us now.

the statute to determine its meaning. *City of Muskego v. Godec*, 167 Wis. 2d 536, 545, 482 N.W.2d 79 (1992). However, if the statutory language is ambiguous or unclear, we may examine the statute's history, scope, context, subject matter and objective in order to ascertain legislative intent. *Renz*, 231 Wis. 2d at 302. A statute is ambiguous if it is capable of being understood in two or more different ways by reasonably well-informed persons. *Id.*

¶ 18. Wisconsin Stat. § 806.245 provides:

806.245 Indian tribal documents: full faith and credit. (1) The judicial records, orders and judgments of an Indian tribal court in Wisconsin and acts of an Indian tribal legislative body shall have the same full faith and credit in the courts of this state as do the acts, records, orders and judgments of any other governmental entity, if all of the following conditions are met:

(a) The tribe which creates the tribal court and tribal legislative body is organized under 25 USC 461 to 479.

(b) The tribal documents are authenticated under sub. 2.

(c) The tribal court is a court of record.

(d) The tribal court judgment offered in evidence is a valid judgment.

(e) The tribal court certifies that it grants full faith and credit to the judicial records, orders and judgments of the courts of this state and to the acts of other governmental entities of this state.

The parties agree that a tribal court judgment must receive full faith and credit if it meets the five statutory requirements. Wis. Stat. § 806.245(1). Teague con-

tends that the Bad River Tribal Court judgment is not a valid judgment under Wis. Stat. § 806.245(1)(d).

¶ 19. The statute sets out six factors for courts to consider when assessing the validity of a judgment:

(4) In determining whether a tribal court judgment is a valid judgment, the circuit court on its own motion, or on the motion of a party, may examine the tribal court record to assure that:

(a) The tribal court had jurisdiction of the subject matter and over the person named in the judgment.

(b) The judgment is final under the laws of the rendering court.

(c) The judgment is on the merits.

(d) The judgment was procured without fraud, duress or coercion.

(e) The judgment was procured in compliance with procedures required by the rendering court.

(f) The proceedings of the tribal court comply with the Indian civil rights act of 1968 under 25 USC 1301 to 1341.

Wis. Stat. § 806.245(4).

¶ 20. Teague argues that the tribal judgment was invalid under Wis. Stat. § 806.245(4)(a), (c) and (d) because the tribal court lacked personal jurisdiction over him, the judgment was not on the merits and was procured by fraud and coercion. However, his principal argument against granting full faith and credit is that Wisconsin's "prior action pending" rule prevented the tribal court from assuming jurisdiction. Teague argues that because he filed his action in circuit court before

the Band filed in tribal court, he won the "race to the courthouse" and the tribal court had no subject matter jurisdiction over the action. We disagree.

¶ 21. Indian tribes are separate sovereigns under federal law. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987). The United States Supreme Court has long recognized the federal government's policy of deferring to tribal sovereignty and encouraging tribal self-government. *See Iowa Mut.*, 480 U.S. at 14 (1987); *Three Affiliated Tribes v. Wold Eng'g*, 476 U.S. 877, 890 (1986); *Williams v. Lee*, 358 U.S. 217, 220–21 (1959). This policy is also reflected in the numerous federal statutes designed to promote tribal self-government. *See* 25 U.S.C. §§ 450, 450a (Indian Self-Determination and Education Assistance Act); 25 U.S.C. §§ 476–479 (Indian Reorganization Act); 25 U.S.C. §§ 1301–1341 (Indian Civil Rights Act).

¶ 22. Historically, individual states have had almost no power to restrict or infringe upon that sovereignty. In *Worcester v. Georgia*, 31 U.S. 515 (1832), the Supreme Court, in an opinion written by Chief Justice Marshall, laid the foundation for the recognition of tribal sovereignty. *Worcester* concerned the conviction of two missionaries for violating a Georgia state law requiring non-Indians living in Cherokee territory to obtain a license from the state governor. *Id.* at 537–38. Concluding that the Indian tribes had sovereign authority over their lands and thus the state law had no effect in Cherokee territory, Marshall noted that: "The Indian nations had always been considered as distinct, independent political communities, retaining their original natural rights, as the undisputed possessors of the soil, from time immemorial. . . ." *Id.* at 559.

¶ 23. The basic policy of *Worcester* has been a vital part of American jurisprudence and its recogni-

tion of tribal sovereignty has not only endured, but has been expanded to restrict the jurisdiction of state courts when tribal issues are involved. *Williams*, 358 U.S. at 219. For example, in *Williams*, the Court concluded that state courts had no jurisdiction over a claim filed by a non-Indian operating a general store on the Navajo reservation against Indian defendants to collect for goods sold to them on credit. *Id.* at 217–18. The Court explained:

> There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves. It is immaterial that respondent is not an Indian. He was on the Reservation and the transaction with an Indian took place there. The cases in this Court have consistently guarded the authority of Indian governments over their reservations. . .If this power is to be taken away from them, it is for Congress to do it.

*Id.* at 223 (citation omitted).

¶ 24. Tribal courts in particular have been heralded as playing "a vital role in tribal self-government" and the federal government has consistently encouraged their development. *Iowa Mut.*, 480 U.S. at 14–15. This encouragement is apparent in the doctrine of tribal exhaustion. The doctrine was introduced in *National Farmers*, 471 U.S. at 853, in which the Court held that anyone asserting an absence of tribal power under federal law has an action that may be pursued in federal court. However, the Court tempered this right with the concept of tribal exhaustion: that the federal court must stay its hand and permit the tribal court to first rule on its own jurisdiction in the case. *Id.* at 856. Similarly, in *Iowa Mutual*, 480 U.S. at 15–16, the

Court recognized that as a matter of comity, federal courts should allow tribal courts first to determine their own jurisdiction. *Iowa Mutual* involved a question of tribal court jurisdiction over a non-Indian entity conducting business on a reservation. The Court refrained from ruling on whether the tribal court had jurisdiction, concluding that civil jurisdiction "presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." *Id.* at 18.

¶ 25. In some instances, Congress has acted to create shared jurisdiction over tribal matters in the state courts. In 1953, Congress passed Public Law 280. *See* 28 U.S.C. § 1360. Although the bulk of Public Law 280 focuses on criminal jurisdiction, it also grants the State of Wisconsin jurisdiction over civil actions arising on Indian lands. Public Law 280 provides in relevant part:

> Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State. . . .

28 U.S.C. § 1360. Wisconsin is included in the accompanying table as a "mandatory" Public Law 280 state. 28 U.S.C. § 1360(a). The statute provides that all Indian country in Wisconsin is covered by Public Law 280.

¶ 26. As originally enacted, Wis. Stat. § 806.245 was limited to judgments of the Menominee Indian tribe. *See* § 1, ch. 369, Laws of 1981. However, in 1991, the legislature amended § 806.245 and expanded its scope to make the judgments of all Indian tribal courts

in Wisconsin eligible for full faith and credit, provided they meet the statutory criteria. 1991 Wis. Act 43, § 1.

¶ 27. The accompanying Legislative Council prefatory note indicates that the statute is intended to create full faith and credit for tribal judgments consistent with the full faith and credit afforded the judgments of courts of other states. *See* Legislative Council Prefatory Note, 1991, Wis. Stat. Ann., § 806.245 (West 1994) (statutory language "is consistent with the doctrine of full faith and credit, as it applies to state court judgments, in which the judgment of another state's court is presumed to be valid"). However, the language and structure of Wis. Stat. § 806.245 is strikingly different from Wis. Stat. § 806.24, the Uniform Foreign Judgments Act, which establishes the procedure by which other states' judgments are afforded constitutional full faith and credit.

¶ 28. Unlike the Uniform Foreign Judgments Act, Wis. Stat. § 806.245 by its terms clearly contemplates a discretionary judicial inquiry into the jurisdictional and procedural validity of tribal court judgments before full faith and credit will be afforded.[7] Several commentators have indicated that the Wisconsin tribal full faith and credit statute is more accurately characterized as a codification of principles of comity rather than the statutory equivalent of constitutional full faith and credit. *See* Darby L. Hoggatt, *The Wyoming Tribal Full Faith and Credit Act: Enforcing Tribal Judgments and Protecting Tribal Sovereignty*, 30 Land & Water L. Rev. 531, 552–56 (1995); *Recognition of Tribal Court Orders in Wiscon-*

---

[7] By contrast, the Uniform Foreign Judgments Act, Wis. Stat. § 806.24, imposes procedural requirements only, basically relating to filing, notice, and stays pending appeal.

*sin: An Overview of State and Federal Law*, State Bar of Wisconsin, Indian Law News, Vol. 7, No. 1 (Spring 1999).

¶ 29. The statute is notably silent as to the jurisdictional validity of a tribal judgment that is rendered while an earlier-filed state court action regarding the same subject matter is pending. Teague argues for the application of the general rule governing jurisdictional tug-of-wars between courts of concurrent jurisdiction within the state. It is well-established in Wisconsin that when two courts possess jurisdiction over a particular subject matter and one of the courts has assumed jurisdiction, it is reversible error for the other to also assume jurisdiction. *Syver*, 6 Wis. 2d at 154; *State ex rel. White v. District Court*, 262 Wis. 139, 143, 54 N.W.2d 189 (1952); *Kusick v. Kusick*, 243 Wis. 135, 138, 9 N.W.2d 607 (1943).

¶ 30. Teague contends that this "prior action pending" rule should apply to the tribal court in this case because the tribal court is a court of concurrent jurisdiction under Public Law 280. True, there is concurrent subject matter jurisdiction in state and tribal court by virtue of Public Law 280. But it does not follow from the fact of concurrent subject matter jurisdiction that the prior action pending rule of *Syver* should apply.

¶ 31. The cases Teague cites are distinguishable because they involve jurisdictional conflicts between *Wisconsin* courts of concurrent jurisdiction. *Sheridan v. Sheridan*, 65 Wis. 2d 504, 513, 223 N.W.2d 557 (1974); *see also State ex rel. Kern v. Kern*, 17 Wis. 2d 268, 273, 116 N.W.2d 337 (1962). For example, *Syver*, 6 Wis. 2d at 158, involved a dispute between a Walworth County Circuit Court and a county court. *White*, 262 Wis. at 143, involved a question of concurrent jurisdic-

tion between a state criminal court and a state juvenile court. Here, although the tribal court is located within the geographic boundaries of the state, it is not a Wisconsin court; it is the court of an independent sovereign. Although full faith and credit here is statutory and conditional rather than constitutional and presumed, it would be incorrect, given the tribe's sovereign status, to apply a state court common law rule to find an erroneous assumption of jurisdiction by the tribal court.[8]

¶ 32. In addition, applying the prior action pending rule to deprive tribal court judgments of full faith and credit under Wis. Stat. § 806.245 would distort the purposes of Public Law 280. Public Law 280 was not designed to deprive tribal courts of jurisdiction where they properly have it. Rather, its primary purpose was to respond to a problem of lawlessness on certain Indian reservations and the lack of adequate tribal law enforcement institutions. *Bryan v. Itasca County*, 426 U.S. 373, 379 (1976). The civil jurisdiction component was included in order to "redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians, and between Indians and other private citizens, by permitting the courts of the States to decide such disputes." *Id.* at 383. Thus, Public Law 280 concerns providing Indian litigants with juris-

---

[8] Teague points to Minnesota as a state which has applied a "first to file" rule in cases such as this one. *See Patsch v. Sun Prairie Island Indian Community*, 567 N.W.2d 276, 278 (Minn. Ct. App. 1997). However, we note that another Minnesota case explained that the "first to file" rule in that state is not in fact a per se rule but is based upon principles of comity and will be applied only when it is consistent with sound judicial administration to do so. *Gavle v. Little Six, Inc.*, 555 N.W.2d 284 (Minn. 1996).

dictional options beyond the tribal courts, not depriving tribal courts of jurisdiction that they otherwise rightfully possess as the courts of an independent sovereign.

¶ 33. Accordingly, we decline to extend the prior action pending rule of *Syver* to these circumstances. However, this leaves the conflict between the state and tribal judgments in this case unresolved, and does nothing to address the larger problem of state and tribal duplicate adjudication. We are faced, then, with the unfortunate choice of ratifying either a "race to the courthouse" or a "race to judgment," a situation the legislature appears not to have contemplated in the enactment of Wis. Stat. § 806.245. Either choice would produce undesirable and unreasonable results, which we presume the legislature did not intend to encourage by the adoption of the tribal full faith and credit statute. On one hand, awarding exclusive jurisdiction to the winner of the race to the courthouse (Teague) puts litigants rather than courts in charge of a sensitive jurisdictional question and deprives the respective courts of the opportunity to weigh considerations of comity. On the other hand, granting full faith and credit to the winner of the race to judgment (the Band) promotes competition between state and tribal courts, wastes judicial resources, and creates an adversarial atmosphere.[9]

---

[9] Teague cites the following from United States Supreme Court Justice Sandra Day O'Connor, and of course we agree: "Whether tribal court, state court or federal court, we must all strive to make the dispensation of justice in this country as fair, efficient and principled as we can." *Lessons From the Third Sovereign: Indian Tribal Courts*, 9 Tribal Court Rec. 12, 14 (Spring-Summer 1996).

¶ 34. This, ultimately, is not a question of full faith and credit under the statute but of judicial allocation of jurisdiction pursuant to principles of comity. Unfortunately, the law currently provides no protocols for state or tribal courts to follow in this situation. Similar problems exist between the courts of different states, and in this context, states have in some areas of the law developed procedures to follow in cases of jurisdictional conflict, where two sovereigns have jurisdiction over the same matter. *See, e.g.*, Uniform Child Custody Jurisdiction Act, Wis. Stat. ch. 822; Wis. Stat. § 767.025(1).[10] The development of similar proto-

---

[10] Wisconsin Stat. § 822.06 provides in relevant part:

(2) Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under s. 822.09 and shall consult the child custody registry established under s. 822.16 concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state.

(3) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with ss. 822.19 to 822.22. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.

(4) The communication between courts called for by sub. (3) or s. 822.07(4) may be conducted on the record by telephone conference to which the courts and all counsel are parties.

Wisconsin Stat. § 822.07(4) states:

cols between state and tribal courts in Wisconsin is a matter of high priority and should be pursued.[11]

¶ 35. Until then, we must rely upon the traditional doctrine of comity, pursuant to which courts will as a matter of discretion rather than obligation defer to the assertion of jurisdiction or give effect to the judgments of other states or sovereigns out of mutual respect, and for the purpose of furthering the orderly administration of justice. *Daniel-Nordin v. Nordin*, 173 Wis. 2d 635, 651, 495 N.W.2d 318 (1993); *Sheridan*, 65 Wis. 2d at 510; *Brazy v. Brazy*, 5 Wis. 2d 352, 361, 92 N.W.2d 738 (1958); *Sengstock v. San Carlos Apache Tribe*, 165 Wis. 2d 86, 95, 477 N.W.2d 310 (Ct. App.

---

Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

Wisconsin Stat. § 767.025(1) provides:

[I]f a question arises as to which court should exercise jurisdiction, a conference involving both judges, all counsel and guardians ad litem may be convened under s. 807.13(3) to resolve the question. The petitioner shall send a copy of any order rendered pursuant to this petition, motion or order to show cause to the clerk of the court in which the original judgment or order was rendered.

[11] We note the existence of the state, tribal and federal court forum, jointly sponsored by this court, the Wisconsin Tribal Judges Association and federal judges from Wisconsin. The forum is comprised of state, tribal and federal judges, and other representatives of the three governments. At a meeting in March 1999 the forum touched on issues of state and tribal court relations from an historical perspective, but did not directly address the issue now before us. We believe that this is a logical forum for the development of protocols governing the exercise of jurisdiction between the state and tribal courts.

1991). The doctrine of comity has been described as follows:

> Comity, being a rule of practice and not a rule of law, rests upon the exercise of sound judicial discretion. *Taus v. Taus* (1958), 2 Wis. 2d 562, 87 N.W.2d 246. The scope of comity is determinable as a matter of judicial policy. *International Harvester Co. v. McAdam* (1910), 142 Wis. 114, 124 N.W. 1042.
>
> There are circumstances under which this court has held that it would be an abuse of discretion to exercise judicial power. Thus, in *Brazy v. Brazy* (1958), 5 Wis. 2d 352, 92 N.W.2d 738, 93 N.W.2d 856, this court has stated:
>
> ". . . The orderly administration of justice requires that there be some rule for avoiding the conflicting exercise of jurisdiction by two courts both of which are competent to decide the issues. Ordinarily, a court should not exercise jurisdiction over subject matter over which another court of competent jurisdiction has commenced to exercise it. See 14 Am. Jur., Courts, p. 435, sec. 243; 21 C.J.S., Courts, p. 745, sec. 492." *Brazy, supra,* p. 361, 92 N.W.2d p. 742.

*Sheridan,* 65 Wis. 2d at 510.[12]

¶ 36. This is consistent with the Restatement (Second) of Conflict of Laws, which provides that while

---

[12] It has been said in the area of state/tribal court relations that "[t]he matter of comity is as much a matter for the courts to decide as it is for the Legislature to decide, if not more." *Fredericks v. Eide-Kirschmann Ford,* 462 N.W.2d 164, 171 (N.D. 1990) (Vandewalle, J., concurring). *See also Mexican v. Circle Bear,* 370 N.W.2d 737, 744 (S.D. 1985) (Henderson, J., concurring) (courts apply comity to "give effect to the laws and judicial decisions of another state or jurisdiction, not as a matter of obligation, but out of deference and mutual respect").

"[a] state may entertain an action even though an action on the same claim is pending in another state. . .courts will frequently, in their discretion, grant a stay of the second action pending the outcome of the first." Restatement (Second) of Conflict of Laws § 86 cmt. B (1969). Comity "promote[s] justice between individuals, and. . .produce[s] a friendly intercourse between the sovereignties to which they belong." *Hilton v. Guyot*, 159 U.S. 113, 165 (1895). The principles of comity have regularly been applied between state or federal courts and tribal courts.[13]

¶ 37. We conclude that comity in this situation required that the circuit court and tribal court confer for purposes of allocating jurisdiction between the two sovereigns. As we have noted, in the family law and

[13] *See, e.g., National Farmer Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 855 (1985) (although concurrent jurisdiction existed in both federal and tribal court, principle of comity required that tribal remedies be exhausted before federal court proceeded with resolution of case); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 19 (1987) (same); *Gavle*, 555 N.W.2d at 290 (generally comity will resolve instances when two courts have concurrent jurisdiction over the same subject; "first to file rule" not applied); *Mexican*, 370 N.W.2d at 741 (based on principles of comity, tribal court orders should be recognized in state court absent full faith and credit requirement); *Fredericks*, 462 N.W.2d at 167–68 (same); *Sengstock v. San Carlos Apache Tribe*, 165 Wis. 2d 86, 95–96, 477 N.W.2d 310 (Ct. App. 1991) (before effective date of current Wis. Stat. § 806.245 and thus full faith and credit not required, nonetheless circuit court recognized tribal court judgment under principles of comity); Stanley G. Feldman & David L. Withey, *Resolving State Tribal Jurisdictional Dilemmas*, 70 Judicature 154, 155 (1995) ("[b]y giving deference to each other's judgments without any legal requirement to do so, state and tribal courts demonstrate respect for each other's. . .jurisdiction").

child custody field, statutes requiring or encouraging such conferences in cases of interstate jurisdictional conflict already exist. *See* Wis. Stat. § 822.06(2), (3) and (4); Wis. Stat. § 767.025(1). In *Daniel-Nordin*, 173 Wis. 2d at 651, a case under Wis. Stat. § 767.025(1), we suggested that principles of comity, in addition to the statute, support communication and cooperation between courts of concurrent jurisdiction for purposes of jurisdiction allocation: "[w]hen the courts of two states have jurisdiction to decide a matter, the orderly administration of justice requires that these courts attempt to avoid conflicting exercises of jurisdiction."

¶ 38. Requiring such a conference under these circumstances ensures that the issue of jurisdiction allocation, involving as it does an evaluation of principles of comity and tribal exhaustion, will be decided by the courts in an atmosphere of mutual respect and cooperation, rather than by the litigants in the height of adversarial battle. In cases of jurisdictional conflict such as this one, such a conference should be convened as soon as either court is aware of the pendency of an action on the same subject matter in the other jurisdiction. Comity is, of course, a reciprocal principle. Until more formal protocols are established, such a procedure will avoid competition between courts and the risk of inconsistent results, and will foster the greatest amount of respect between state and tribal courts.

██

¶ 39. Accordingly, we reverse the court of appeals and remand to the circuit court for a conference between the circuit and tribal courts for purposes of addressing the appropriate allocation of jurisdiction over the issues in this case. Full faith and credit under Wis. Stat. § 806.245 cannot properly be considered

until the jurisdictional conflict is resolved between the courts.[14]

¶ 40. Our holding today should be placed in the larger context of the struggle that is taking place, in Wisconsin and throughout the country, over issues of jurisdictional conflict and full faith and credit between tribal, state and federal courts. In 1993, the Conference of Chief Justices, together with the National Center for State Courts, held a conference to develop a strategy for resolving the jurisdictional problems encountered by tribal, state and federal courts.[15] One of four major recommendations to emerge from the conference was that "[t]ribal, state, and federal courts should continue cooperative efforts to resolve and reduce jurisdictional disputes."[16] In 1994, the Conference of Chief Justices created a standing committee on state/tribal jurisdictional issues, the central goals of which have been "communication, cooperation, and comity."[17] Our decision today seeks to ensure that jurisdictional disputes between state and tribal courts in Wisconsin will be resolved in conformity with those goals.

██

¶ 41. We conclude that the "prior action pending" rule of *Syver* does not apply to deprive a tribal court of

----

[14] Accordingly, we do not reach Teague's arguments under Wis. Stat. § 806.245(4)(a), (c) and (d) that the tribal court lacked personal jurisdiction over him, that the judgment was not on the merits, and that the judgment was obtained by fraud.

[15] Stanley G. Feldman & David L. Withey, *Resolving State Tribal Jurisdictional Dilemmas*, 70 Judicature 154, 155 (1995).

[16] Sovereignty Symposium VII, *Full Faith and Credit* at 3, Oklahoma Supreme Court (1994) (reprinting Report and Resolution arising out of 1993 Santa Fe Conference).

[17] Stanley G. Feldman & David L. Withey, *Resolving State Tribal Jurisdictional Dilemmas*, 70 Judicature 154, 155 (1995).

the subject matter jurisdiction necessary for its judgments to receive full faith and credit under Wis. Stat. § 806.245. We further conclude that principles of comity in this situation required the circuit and tribal courts to confer for purposes of jurisdiction allocation prior to proceeding to judgment. We therefore reverse the court of appeals and remand to the circuit court to convene such a conference, at which the respective courts will weigh considerations of comity and tribal exhaustion to determine whether the judgments should be reopened for purposes of jurisdiction allocation and retrial.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.